IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TONY ROQUE, a Washington resident

        Plaintiff,

    vs.

SEATTLE HOUSING AUTHORITY, a public entity,

        Defendant.

NO.  2:20-cv-658

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

COMES NOW, Plaintiff, Tony Roque, by and through his attorneys at Washington Civil & Disability Advocate, for his Complaint for Declaratory and Injunctive Relief and Damages to state and allege as follows:

## I.     INTRODUCTION

1.     Plaintiff Tony Roque is an individual with quadriplegia. He requires a full-time care in order to assist with Activities of Daily Living ("ADLs") and major life activities, as well as to provide life-sustaining medical care. Seattle Housing Authority ("SHA") discriminates against Mr. Roque by refusing to allow his primary care provider and visiting nurses to park at his apartment complex, despite providing parking for other residents, therefore illegally denying Mr. Roque a reasonable disability accommodation. As a result of SHA's actions, Mr. Roque's

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1 care provider and visiting nurses are unable to effectively care for Mr. Roque as there is no

2 reasonable transportation alternative for them to get to his residence. Without the help of his care

3 provider and visiting nurses, Mr. Roque is completely alone, and at risk of starvation and serious

4 health complications, and even death.

5      2.      Mr. Roque brings this action seeking declaratory, injunctive, and equitable relief;

6 compensatory damages; and attorneys' fees and costs to redress SHA's unlawful discrimination

7 on the basis of disability in violation of Title II of the Americans with Disabilities Act ("ADA"),

8 42 U.S.C. § 12131 *et seq.;* The Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 3604 *et*

9 *seq.*; the Washington Law Against Discrimination ("WLAD"), RCW § 49.60.010 et seq; Section

10 504 of The Rehabilitation Act U.S.C. § 794 *et seq*. ("Section 504"); Title IV of the ADA, 42

11 U.S.C.A. § 12201 *et seq.;* and The Residential Landlord Tenant Act ("RLTA"), RCW 59.18.010

12 *et. seq.*

13      3.      Based on Mr. Roque's allegations herein, it is evident that the public entity SHA

14 has failed to reasonably accommodate him as is legally required. Mr. Roque brings this action in

15 order to compel SHA in order to end their discrimination and in order to reasonably

16 accommodate his disability by allowing his care provider and visiting nurses to park on the

17 premises as needed to provide Mr. Roque his necessary, life-sustaining care as they did without

18 issue since Mr. Roque moved into his residence in February 2018.

19                          **II.      PARTIES**

20      4.      Mr. Tony Roque brings this action and is an individual residing in Washington

21 State. He is 49 years old and has C-6 Quadriplegia.  Mr. Roque is limited in many major life

22 activities including but not limited to: caring for oneself, performing manual tasks, eating,

23

Complaint for Declaratory and Injunctive Relief
and Damages
Page **2** of **22**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

sleeping, walking, standing, lifting, bending[1], reading and working. Mr. Roque also requires full-time care to assist in Activities of Daily Living ("ADLs") such as bathing, body care, bed mobility, eating, locomotion, medication assistance, use of the toilet, personal hygiene, dressing, and transfer.  Mr. Roque is a qualified individual with a disability within the meaning of the Americans with Disabilities Act ("ADA"), The Rehabilitation Act, the Washington Law Against Discrimination ("WLAD"), and has a handicap under the Fair Housing Act Amendments ("FHAA").

5. Seattle Housing Authority ("SHA") is an independent public entity located in Washington State and operates Raven Terrace, Mr. Roque's residence. The majority of SHA's funding is through the federal government, through the Department of Housing and Urban Development. SHA is a public entity under the ADA and Section 504 of the Rehabilitation Act.

### III. JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising in the Constitution, laws, or treaties of the United States.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(4), which gives district courts jurisdiction over actions to secure civil rights under Acts of Congress.

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over state law claims.

9. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 because the events that gave rise to Mr. Roque's Complaint for Injunctive Relief and Damages occurred in this district and SHA resides within this district.

---

[1] Mr. Roque has C-6 quadriplegia and as a result cannot walk, stand, lift, or bend.  To the extent that it was required that he do so, he would need the help of multiple caregivers and nurses.

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

# IV. FACTUAL ALLEGATIONS

10.    Tony Roque is 49 years old and has C-6 quadriplegia.

11.    Mr. Roque also suffers from high blood pressure, neurogenic bowel and bladder, history of recurrent urinary tract infections, recurrent decubitis skin ulcers requiring several surgeries, and a history of depression.

12.    Due to his disability, Mr.  Roque fully relies on his care provider and visiting nurses in order to stay alive.

13.    Mr. Roque needs a care provider present 24 hours/day.

14.    Mr. Roque requires assistance with most ADLs, including but not limited to bathing, body care, bed mobility, eating, locomotion, medication assistance, use of the toilet, personal hygiene, dressing, and transfer.

15.    Mr. Roque also requires assistance with major life activities including but not limited to caring for oneself, performing manual tasks, eating, sleeping, walking, standing, lifting, bending, reading and working.

16.    Mr. Roque must be repositioned every 30 minutes to relieve pressure on his body and maintain the integrity of his skin.

17.    Mr. Roque's current care provider, Fatuma Mohamud, is the only care provider who is still willing and able to work and help Mr. Roque during the COVID-19 pandemic.

18.    Mr. Roque's apartment is not large enough for a care provider to live there full-time, so care providers must commute using a car.

19.    Care providers commute by car to not only transport themselves to Mr. Roque's residence, but to also bring him his food, medicine, and medical supplies.

20.    Mr. Roque has been a resident of Raven Terrace Apartments ("Raven Terrace")

Complaint for Declaratory and Injunctive Relief
and Damages
Page **4** of **22**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   since February 2018.

2        21.    Raven Terrace is located at 820 Yesler Way in Seattle and is owned and operated

3   by SHA as a public housing community for low-income residents.

4        22.    Raven Terrace is located in a busy and densely populated neighborhood of Seattle

5   that does not have consistently available street parking. Where available street parking can be

6   found, parking is limited to two (2) hours and is Zone 7 Restricted Parking Zone ("RPZ").

7        23.    Raven Terrace offers a parking garage on-site for residents and staff to park.

8        24.    The garage at Raven Terrace has both assigned and unassigned parking.

9        25.    Residents and employees may both park in the parking garage.

10        26.    In order for Mr. Roque's care provider and visiting nurses to provide his life-

11   sustaining care, Mr. Roque requires them to park in the Raven Terrace parking garage.

12        27.    Given the extent of Mr. Roque's personal care needs, it is imperative that the

13   caregiver and visiting nurses are present for a significant period of time.

14        28.    Mr. Roque's care provider brings a car full of groceries, medicine, and medical

15   supplies to Mr. Roque on an almost daily basis.

16        29.    If Mr. Roque needs to come into his doctor's medical office or the hospital, his

17   care providers need to accompany him to assist with transfers, body repositioning and with

18   catheter care and bowel movements. They will also need to bring his belongings such as his

19   medical devices like a portable urinal should his catheter bag reach it limits. As such, Mr. Roque

20   requires his caregivers to have access to their car for his medical supplies and a place nearby for

21   them to leave their car should they need to accompany him for medical care.

22        30.    For over 24 months, Mr. Roque's care providers and visiting nurses were allowed

23   to park at Raven Terrace without incident.

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

31.    On or about March 5, 2020, SHA towed Mr. Roque's care provider's car while she was at his residence caring for him.

32.    Mr. Roque's care provider had to pay almost $500 to retrieve her car.

33.    After this incident, Raven Terrace staff informed Mr. Roque for the first time that the parking garage was only for residents and staff, not visitors.

34.    SHA informed Mr. Roque that because he cannot drive, and as a result does not own a car, he cannot use a parking space, even for his required care provider or visiting nurses.

35.    Mr. Roque's primary care provider lives 6.6 miles away from Raven Terrace.

36.    Since SHA implemented their new parking policy, Mr. Roque's primary care provider has been forced to endure three bus stops and walking to reach Raven Terrace, all while carrying her belongings and Mr. Roque's groceries and medical supplies.

37.    Finding alternative parking is not an option for the care provider as there is no consistent street parking available in Mr. Roque's urban Yesler neighborhood.

38.    The on-street parking near Mr. Roque's building is Zone 7 Restricted Parking Zone.

39.    RPZ parking requires permit holder to either a) be a resident of the zone, or b) be an employee of an employer within the zone.

40.    Public transportation is beyond inconvenient as it poses a health risk to Mr. Roque, who is vulnerable to infection and cannot risk unnecessary exposure to germs, including COVID-19.

41.    Both Mr. Roque and his care provider are low-income and cannot afford a private taxi service which would cost at least $37 per trip.

42.    Furthermore, finding alternative care providers and visiting nurses is not an option

Complaint for Declaratory and Injunctive Relief and Damages
Page **6** of **22**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1 because other care providers and nurses have refused to visit Mr. Roque during the COVID-19

2 outbreak.

3      43.      Regardless of the COVID-19 situation, Mr. Roque's choice of healthcare

4 providers should not be dictated by SHA's parking policies.

5      44.      On March 9, 2020, Mr. Roque requested a parking permit from Raven Terrace

6 property manager,  Davina O'Connor, and building manager Eric Owens, via email about the

7 situation, but O'Connor refused to give him one.

8      45.      On March 10, 2020, Mr. Roque next contacted accommodations specialist Sanja

9 Stegich to request a reasonable accommodation to allow Mr. Roque's care provider and visiting

10 nurses to park in the parking lot.

11      46.      On March 26, 2020, Mr. Roque's physician Dr. Matthew Jaffy submitted a

12 medical questionnaire in support of Mr. Roque's reasonable accommodation request.

13      47.      On April 6, 2020, Mr. Roque's case manager at the Human Services Department

14 for the City of Seattle, Mark Bernstein, submitted a letter in support of Mr. Roque's reasonable

15 accommodation request.

16      48.      Bernstein's email clearly stated that it is imperative that Mr. Roque needs his care

17 provider and visiting nurses at his residence for extended periods of time and that

18 accommodations for them to park at Raven Terrace is an important part of Mr. Roque's support

19 through the city's service plan.

20      49.      Despite this information, SHA denied Mr. Roque's request for reasonable

21 accommodation on April 20, 2020.

22      50.      SHA's stated reason for the denial is that the accommodation was limited to Mr.

23 Roque's caregiver, who is not disabled and not a participant in SHA's low income housing

Complaint for Declaratory and Injunctive Relief
and Damages
Page **7** of **22**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   program.

2         51.    Upon information and belief, SHA has denied Mr. Roque's request for reasonable

3   accommodation because Mr. Roque continued, out of necessity and in assertion of his rights as a

4   person with a disability, to allow his care provider and visiting nurses to park in the Raven

5   Terrace garage.

6         52.    Without full and consistent access to his care provider's vital services, Mr. Roque

7   has been unnecessarily suffering both physically and emotionally.

8         53.    Mr. Roque has gone without eating because his care provider cannot bring him

9   food and supplies. Mr. Roque went four days in a row on nothing but bread and condiments.

10        54.    Mr. Roque's skin is deteriorating due to unrelieved pressure because his care

11   provider is no longer able to consistently access Mr. Roque to reposition his body regularly.

12        55.    When Mr. Roque's care provider is able to care for him, her back problems

13   prevent her from being able to turn him to bathe him.

14        56.    On April 17, Mr. Roque sent an email to Case Manager at the Human Services

15   Department for the City of Seattle, Mark Bernstein letting him know that due to his care

16   provider's resulting back problems, Mr. Roque had been left on his back for two days with no

17   relief from the pressure.

18        57.    Because of the lower back problems his care provider has developed from

19   walking and carrying heavy loads to Raven Terrace, Mr. Roque's care provider is simply unable

20   to provide the Mr. Roque needs in order to live.

21        58.    Mr. Roque could starve, die from infection, or be forced to move into a long-term

22   care facility if he does not consistently the life-sustaining care that he receives from his care

23   provider and visiting nurses.

Complaint for Declaratory and Injunctive Relief
and Damages
Page **8** of **22**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

59.     Mr. Roque has no family in Washington and his care provider is his only source of social interaction and caregiving.

60.     Mr. Roque's imminent health risks and increased isolation, in addition to the fear attached to the COVID-19 pandemic, has caused him great emotional distress.

61.     Due to SHA's discrimination against Mr. Roque due to his disability, deliberate indifference, and failure to provide Mr. Roque with a reasonable accommodation, Mr. Roque is at risk of starvation, infection, hospitalization, institutionalization, severe depression, and death.

## V. FIRST CAUSE OF ACTION
### Title II of the Americans with Disabilities Act of 1990
### 42 U.S.C. §§ 12131 *et seq*

62.     Mr. Roque incorporates by reference the allegations in the paragraphs above.

63.     The ADA was enacted nearly 30 years ago in order to protect individuals with disabilities against discrimination.

64.     Mr. Roque is substantially limited the major life activities of caring for oneself, performing manual tasks, eating, sleeping, walking, standing, lifting, bending, reading and working. He is therefore an individual with a disability within the meaning of Title II of the ADA, 28 C.F.R. § 35.108(a).

65.     Mr. Roque is a qualified individual with a disability under the meaning of Title II of the ADA, 42 U.S.C.A. § 12131(2), because he meets the essential eligibility requirements for the receipt of public housing services by SHA, a public entity.

66.     As a public housing agency, SHA is a public entity under the meaning of Title II of the ADA., 42 U.S.C.A. § 12131(1).

67.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

Complaint for Declaratory and Injunctive Relief and Damages
Page **9** of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132.

68.     SHA illegally and intentionally discriminated and continues to discriminate against Mr. Roque, on the basis of his disability and in violation of Title II of the ADA, by denying him the benefits of public housing that meets his basic needs.

69.     A public entity must make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

70.     As a public entity, SHA is required to make reasonable modifications in its parking policies in order to avoid discriminating against Mr. Roque because of his disability.

71.     Allowing Mr. Roque's care provider and visiting nurses to park in the Raven Terrace garage will not fundamentally alter the nature of public housing service, but rather will further meet SHA's purpose of serving low-income and community members with disabilities.

72.     As SHA has refused to make reasonable modifications for Mr. Roque, SHA is in violation of Title II of the ADA.

73.     SHA discriminates against Mr. Roque on the basis of his disability because he cannot operate and thus does not own his own car.

74.     Compensatory damages ay be recoverable by an individual under Title II of the ADA when a public entity intentionally discriminates through "deliberate indifference." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

75.     "Deliberate indifference requires both knowledge that a harm to a federally

Complaint for Declaratory and Injunctive Relief and Damages
Page **10** of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139.

76.   SHA, through the Raven Terrace building manager Eric Owens, property manager Davina O'Connor, and accommodations specialist Sanja Stegic, knew that Mr. Roque desperately needed the life-sustaining care and medical treatment from his care provider and visiting nurses. They further knew that in order to properly care for Mr. Roque, his care provider and visiting nurses need to park at Raven Terrace for a minimum of several hours at a time, often longer. Their knowledge is from not only Mr. Roque's personal requests, but from official communication with both Mr. Roque's doctor and his Case Manager. In spite of this knowledge, and repeated written requests from Mr. Roque, SHA intentionally denied Mr. Roque reasonable accommodation, intentionally failing to act to protect his rights.

77.   SHA intentionally discriminated and continues to do so against Mr. Roque, on the basis of his disability, in violation of Title II of the ADA and its implementing regulations.

78.   Mr. Roque is therefore entitled to injunctive relief, monetary damages, and an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12133.

## VI. SECOND CAUSE OF ACTION
### The Fair Housing Amendments Act
### 42 U.S.C. § 3604 *et seq.*

79.   Plaintiff incorporates by reference all allegations in the paragraphs above.

80.   The Federal Fair Housing Amendments Act ("FHAA") makes it unlawful to "discriminate against any person…in the provision of services or facilities in connection with [a] dwelling, because of a handicap of

(A) that person; or

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

C) any person associated with that person. 42 U.S.C. § 3604(f)(2).

81.     Under the FHAA, a person has a "handicap" when they have "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C.A. § 3602(h)(1).

82.     Mr. Roque has C-6 quadriplegia, requires the use of a power wheelchair for transportation, and is a person with a handicap within the meaning of the FHAA. 42 U.S.C. § 3602(h)(1).

83.     The parking garage at Raven Terrace is a facility in connection with the residence and is made available to other residents without disabilities as a service provided with their housing.

84.     By denying Mr. Roque use of the parking garage facility for his housing needs, and justifying the denial because he cannot drive a car due to his disability, SHA discriminates against Mr. Roque in the provision of services at Raven Terrace.

85.     Discrimination under the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

86.     Federal Regulations implementing the FHAA specifically give an example of a reasonable accommodation as providing a reserved parking space for a mobility impaired resident. "It is a violation of [the regulation] for the owner or manager of [the residence] to refuse to make this accommodation. Without a reserved space, [the resident] might be unable to live in [the residence] at all...The accommodation therefore is necessary to afford [him] an equal opportunity to use and enjoy a dwelling. 24 C.F.R. § 100.204(b)(example 2).

Complaint for Declaratory and Injunctive Relief
and Damages
Page 12 of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

87.     This previous example is analogous to Mr. Roque's situation. He must have access to a parking space in the garage in order to get the care he needs from his providers not only to be able to live at Raven Terrace, but to live at all. Furthermore, when he does need to leave Raven Terrace for appointments, his care provider and visiting nurses need a parking space to transport him. Despite not physically being able to drive due to his disability, Mr. Roque would be the individual making direct use of this reasonable accommodation in order to have an equal opportunity to use and enjoy his housing. The only difference between Mr. Roque making use of a space in the parking garage and other residents using the parking garage is his disability, an illegal and discriminatory distinction.

88.     SHA discriminates against Mr. Roque by refusing to make reasonable accommodations in their parking garage policies, despite knowing that the accommodation is necessary for Mr. Roque, as a person with a disability, to have an equal opportunity to use and enjoy his residence.

89.     SHA's discriminatory conduct as alleged in this Complaint for Declaratory and Injunctive Relief has harmed Mr. Roque and threatened his life. The harm and the risk will continue without declaratory and injunctive relief.

90.     SHA's discriminatory conduct as alleged in this Complaint for Declaratory and Injunctive Relief entitles Mr. Roque to declaratory and injunctive relief as well as actual damages. 42 U.S.C. § 3613(c).

91.     SHA's discriminatory conduct as alleged in this Complaint for Declaratory and Injunctive Relief entitles Mr. Roque to recover reasonable attorneys' fees and costs. *Id.*

## VII. THIRD CAUSE OF ACTION
### The Washington Law Against Discrimination
### RCW §§ 49.60.010 *et seq.*

Complaint for Declaratory and Injunctive Relief
and Damages
Page **13** of 22                                    WASHINGTON CIVIL & DISABILITY ADVOCATE
                                                        4115 Roosevelt Way NE, Suite B
                                                        Seattle, WA 98105
                                                        (206) 428-3558

1    92.    Mr. Roque incorporates by reference the allegations in the paragraphs above.

2    93.    The Washington Law Against Discrimination ("WLAD") declares: "The right to

3    be free from discrimination because of . . . the presence of any sensory, mental, or physical

4    disability . . . is recognized as and declared to be a civil right.  This right shall include, but not be

5    limited to: . . . (b) The right to the full enjoyment of any of the accommodations, advantages,

6    facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement

7    . . . " RCW § 49.60.030(1).

8    94.    A prima facie case of public accommodation discrimination under the WLAD

9    consists of: (1) [the plaintiff has] a disability recognized under the statute; (2) the defendant's

10   business or establishment is a place of public accommodation; (3) they were discriminated

11   against by receiving treatment that was not comparable to the level of designated services

12   provided to individuals without disabilities by or at the place of public accommodation; and, (4)

13   the disability was a substantial factor causing the discrimination. *Fell v. Spokane Transit Auth*.,

14   128 Wash. 2d 618, 637, 911 P.2d 1319, 1328 (1996).

15   95.    Mr. Roque is an individual with a disability within the meaning of the WLAD as

16   he has a physical impairment that is medically cognizable or diagnosable. RCW §

17   49.60.040(7)(a)(i).

18   96.    SHA charges for occupancy of its property and its facilities are conducted for

19   housing. Parking at Raven Terrace is provided to residents in a communal garage accessed and

20   used by many residents.  Thus, the parking garage at Raven Terrace is a public accommodation

21   under the WLAD. RCW 49.60.040.

22   97.    Mr. Roque was not treated comparably to his fellow Raven Terrace residents

23   because he is not provided the reasonable accommodations he needs in order to live safely in

Complaint for Declaratory and Injunctive Relief
and Damages
Page **14** of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

public housing. Mr. Roque was denied a parking space because he does not have a car himself. Mr. Roque does not have a car because he cannot drive a car due to his disability. The only reason Mr. Roque is provided with this discriminatory living experience is SHA's refusal to accommodate Mr. Roque's disability.

98.     Specifically in regard to housing, as opposed to public accommodations, it is an unfair practice under the WLAD to "refuse to make reasonable accommodation in rules, policies, practices, or services when such accommodations may be necessary to afford a person with the presence of any sensory, mental, or physical disability…equal opportunity to use and enjoy a dwelling." RCW § 49.60.222(2)(b).

99.     SHA has committed an unfair practice under the WLAD by refusing to provide Mr. Roque with the reasonable accommodation that he needs in order to safely live at Raven Terrace. SHA denies him the equal opportunity to use and enjoy his residence in violation of the WLAD.

100.     Pursuant to RCW § 49.60.030(2), Mr. Roque is entitled to declaratory and injunctive relief and to recover from SHA actual damages and reasonable attorneys' fees and costs incurred in bringing this action.

### VIII. FOURTH CAUSE OF ACTION
### Section 504 of The Rehabilitation Act of 1973
### 29 U.S.C. § 794 et seq.; "Section 504"

101.     Plaintiff incorporates by reference the allegations in the paragraphs above.

102.     Mr. Roque is limited in the major life activity of caring for oneself, performing manual tasks, eating, sleeping, walking, standing, lifting, bending, reading and working and is thus an individual with a disability as defined by Section 504. 29 U.S.C. § 705(9).

Complaint for Declaratory and Injunctive Relief
and Damages
Page **15** of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

103.     At all times relevant to this action, SHA has been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

104.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

105.     A recipient of federal funds that provides housing illegally discriminates by "[denying] a qualified individual with handicaps the opportunity to participate in, or benefit from, the housing, aid, benefit, or service"… or providing "housing, aid, benefit, or service that is not as effective in affording the [individual with a disability] an equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 24 C.F.R. § 8.4(b)(1)(i),(iii).

106.     Access to and use of the parking garage is a benefit and service provided by SHA for residents who qualify for public housing at Raven Terrace.

107.     By not reasonably accommodating Mr. Roque's need for parking for his care provider and visiting nurses in order to provide him the caregiving he needs to live, SHA has excluded Mr. Roque and denied him the opportunity to participate in that benefit and service of public housing due to his disability.

108.     SHA denies Mr. Roque an equal opportunity to gain the same benefit of sufficient housing and parking at Raven Terrace, an opportunity other residents of Raven Terrace without disabilities enjoy.

Complaint for Declaratory and Injunctive Relief and Damages
Page 16 of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

109.     Any program receiving federal assistance may not, directly or through contractual or other arrangements, "utilize criteria or methods of administration the purpose or effect of which would:

> (i) Subject qualified individuals with handicaps to discrimination solely on the basis of handicap;
>
> (ii) Defeat or substantially impair the accomplishment of the objectives of the recipient's federally assisted program or activity for qualified individuals with a particular handicap involved in the program or activity, unless the recipient can demonstrate that the criteria or methods of administration are manifestly related to the accomplishment of an objective of a program or activity; 24 C.F.R. § 8.4(b)(4)."

110.     The criteria SHA used to deny Roque access and use of the Raven Terrace parking garage had the effect of subjecting him to discrimination solely based on his disability. SHA only denied Mr. Roque access because he has a disability and therefore cannot drive, despite having a legitimate need and right to use the garage space as a resident.

111.     SHA's criteria used to deny Mr. Roque's care provider and visiting nurses access to the parking garage substantially impairs the accomplishment of the objective of public housing – providing safe residences for low-income individuals and individuals with disabilities. The criteria is unrelated to accomplishing the federal program. Rather, it produces the opposite effect for Mr. Roque.

112.     The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

Complaint for Declaratory and Injunctive Relief
and Damages
Page **17** of **22**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

113.    An individual may recover compensatory damages under the Rehabilitation Act when a public entity intentionally discriminates through "deliberate indifference." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

114.    "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139.

115.    SHA, acting through the Raven Terrace manager Eric Owens, property manager Davina O'Connor, and accommodations specialist Sanja Stegic, was informed in writing on multiple occasions that Mr. Roque desperately needed the life-sustaining treatment from his care provider and visiting nurses.

116.    SHA further knew that in order to properly care for Mr. Roque, his care provider and visiting nurses must park at Raven Terrace for several hours at a time.

117.    SHA's knowledge is from not only Mr. Roque's personal requests, but from official communication with both Mr. Roque's doctor and his case manager.

118.    In spite of this knowledge, SHA intentionally denied Mr. Roque's reasonable accommodation, intentionally failing to act to protect his rights.

119.    SHA intentionally discriminated against Mr. Roque, on the basis of his disability, in violation of Title II of the ADA and its implementing regulations.

120.    SHA intentionally discriminated against Mr. Roque, on the basis of his disability, in violation of the Rehabilitation Act and its implementing regulations.

121.    Mr. Roque is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss sustained as a result of SHA's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

Complaint for Declaratory and Injunctive Relief and Damages
Page **18** of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

## IX. FIFTH CAUSE OF ACTION
### Title IV of Americans with Disabilities Act
### 42 U.S.C.A. § 12201 *et seq.*

122.     Mr. Roque incorporates by reference the allegations in the paragraphs above.

123.     Title IV of the ADA addresses retaliation and provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the [ADA]." 42 U.S.C. § 12203(a).

124.     It is unlawful under Title IV to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed...any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b).

125.     Mr. Roque opposed the "residents only" parking policy by filing a reasonable accommodation claim, and he continued to exercise his rights, out of necessity, to receive a reasonable accommodation under the ADA by allowing his care providers and visiting nurses to park at Raven Terrace in opposition to SHA's new policy.

126.     After he opposed the parking policy and asserted his ADA rights, SHA denied Mr. Roque's request for accommodation, despite understanding reasonableness of the request for accommodation,  the strong recommendations from his doctor and caseworker, and the dire consequences of failing to grant the request.

127.     By denying Mr. Roque's request for reasonable accommodation, SHA retaliated against him, interfering with his right to accommodation under the ADA and punishing him for voicing his opposition to SHA's policies.

128.     SHA further refused to timely expedite any process for appealing the refusal, requiring Mr. Roque to wait weeks or months for further SHA determinations on his request.

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

129.    Due to SHA's discrimination and retaliatory actions in violation of Title IV of the ADA, Mr. Roque is entitled to the same remedies as under Title II of the ADA: injunctive relief, monetary damages, and an award of attorneys' fees, costs. 42 U.S.C.A. § 12203(c).

## X. SIXTH CAUSE OF ACTION
## RESIDENTIAL LANDLORD-TENANT ACT
## RCW 59.18.150

130.    Plaintiff incorporates by reference the allegations in the paragraphs above.

131.    RCW 59.18.150(6) in part states:

> Except in the case of emergency or if it is impracticable to do so, the landlord shall give the tenant at least two days' written notice of his or her intent to enter and shall enter only at reasonable times. The notice must state the exact time and date or dates of entry or specify a period of time during that date or dates in which the entry will occur, in which case the notice must specify the earliest and latest possible times of entry. The notice must also specify the telephone number to which the tenant may communicate any objection or request to reschedule the entry.

132.    R.C.W 59.18.150(8) provides:

> A landlord or tenant who continues to violate the rights of the tenant or landlord with respect to the duties imposed on the other as set forth in this section after being served with one written notification alleging in good faith violations of this section listing the date and time of the violation shall be liable for up to one hundred dollars for each violation after receipt of the notice. The prevailing landlord or tenant may recover costs of the suit or arbitration under this section, and may also recover reasonable attorneys' fees.

133.    On or about January 20, 2019, building manager Eric Owens casually walked into Mr. Roque's bedroom while he was laying in bed watching TV, and introduced himself to Mr. Roque.  Mr. Roque told Eric Owens not to do that again and filed a complaint with SHA.

134.    On or about March 14, 2019, an SHA staff member came up to Mr. Roque's door and walked into his apartment without notice.   Mr. Roque filed a complaint with SHA about this incident.

Complaint for Declaratory and Injunctive Relief
and Damages
Page 20 of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

135.     On or about April 29, 2019, SHA's maintenance worker entered Mr. Roque's apartment without providing any notice to Mr. Roque.  On the same day, Mr. Roque emailed Eric Owens stating he was filing a complaint with SHA because this was the third time SHA has entered Mr. Roque's apartment without notice.

136.     In all of the above mentioned incidents, SHA failed to provide Mr. Roque notice of intent to enter Mr. Roque's apartment.

137.     By failing to provide Mr. Roque notice, SHA is in violation of RCW 59.18.150(6).

138.     Mr. Roque is entitled to monetary compensation of each occurrence of SHA's failure to provide notice as well as attorney's fees for bringing this action.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this action;

2. Find and declare Defendant SEATTLE HOUSING AUTHORITY to be in violation of Title II of the Americans with Disabilities Act, The Fair Housing Act, Section 504 of the Rehabilitation Act, Title IV of the Americans with Disabilities Act, the Washington Law Against Discrimination, and the Residential Landlord Tenant Act because SHA does not comply with state and federal laws and regulations;

3. Issue an injunction requiring SHA to permit Mr. Roque's care provider and visiting nurses full and unrestricted access to Raven Terrace Parking garage as is necessary to provide Mr. Roque care.

4. Award Plaintiff:

     a.   Actual and Compensatory Damages pursuant to Title II of the ADA, the FHAA,

Complaint for Declaratory and Injunctive Relief
and Damages
Page 21 of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

the Rehabilitation Act, the WLAD, Title IV of the ADA, and the RLTA.

    b.   Reasonable costs and attorneys' fees pursuant to the ADA, the FHAA, the

        Rehabilitation Act, the WLAD, Title IV of the ADA, and the RLTA.

    c.   Interest on all amounts at the highest rates and from the earliest dates allowed by

        law.

5.   Award such additional or alternative relief as may be just, proper, and equitable.

DATED THIS 30TH day of April, 2020

By:

*s/ Conrad Reynoldson*
Conrad Reynoldson
WSBA# 48187
conrad@wacda.com
(206) 876-8515

*s/Bonnie Fong*
Bonnie Fong
WSBA# 51276
bonnie@wacda.com
(206) 971-1124

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 ROOSEVELT WAY NE, SUITE B, SEATTLE, WA 98105
*Attorneys for Plaintiff*

Complaint for Declaratory and Injunctive Relief
and Damages
Page 22 of 22

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558