The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TONY ROQUE,

        Plaintiff,

v.

SEATTLE HOUSING AUTHORITY,

        Defendant.

Civil Action No. 2:20-cv-00658-RAJ

**ORDER GRANTING MOTION FOR A TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Plaintiff's motion for a preliminary injunction and temporary restraining order. Dkt. # 2. For the following reasons, Plaintiff's motion for a temporary restraining order is **GRANTED**.

## I.    BACKGROUND

Plaintiff Tony Roque ("Plaintiff" or "Mr. Roque") is a 49-year old man with C-6 paraplegia and several other medical conditions. Dkt. # 5 at ¶ 1. Because of his disability, Mr. Roque requires 24-hour care and assistance with most daily functions such as "bathing, body care, bed mobility, eating, locomotion, medication assistance, use of the toilet, personal hygiene, dressing, and transferring." *Id.* at ¶¶ 2-3; Dkt. # 3 at ¶ 10. For example, Mr. Roque must be repositioned every 30 minutes to relieve pressure and maintain the integrity of his skin. *Id.* at ¶ 5. Mr. Roque alleges that his current care provider, Fatuma Mohamud ("Ms. Mohamud") is the only care provider willing to assist him during the ongoing COVID-19 crisis. Dkt. # 5 at ¶ 6. To do so, Ms. Mohamud must

ORDER - 1

commute to Mr. Roque's apartment each day, often transporting food, medicine, and medical supplies, and remain in the apartment for a significant amount of time. *Id.* at ¶¶ 6-8.

Mr. Roque's apartment, the Raven Terrace Apartments, is owned and operated by the Seattle Housing Authority ("Defendant" or "SHA") as a public housing community for low-income residents. Dkt # 5 at ¶ 10; Dkt. # 6, Ex. A.  Located in a densely populated neighborhood of Seattle, consistent street parking is not always available near Raven Terrace. *Id.* at ¶ 11.  When available, parking is limited to two hours in a Zone 7 Restricted Parking Zone. *Id.*  Raven Terrace offers a parking garage on-site for residents and staff. *Id.* at ¶ 12.

Until recently, Ms. Mohamud was permitted to park in the garage without incident. Dkt. # 5 at ¶ 17.  On March 5, 2020, however, SHA towed Ms. Mohamud's car (which was parked in the garage) while she was in Mr. Roque's apartment caring for him. Raven Terrace staff informed Mr. Roque that the car was towed because the garage is limited to residents and staff. *Id.* at ¶¶ 18-20.  Mr. Roque was also informed that because he cannot drive and does not own a car, he cannot use a parking space in the garage, even for his care provider or nurses. *Id.* at ¶ 21.  Mr. Roque alleges that neither he or Ms. Mohamud can afford a private taxi service and Ms. Mohamud can no longer drive because there is no consistently available street parking in his neighborhood. Dkt. # 5 at ¶¶ 27, 29.  As a result, Ms. Mohamud has begun taking public transportation, often carrying her own belongings along with Mr. Roque's groceries and medical supplies, which has resulted in Ms. Mohamud sustaining lower back injuries. *Id.* at ¶¶ 23-26.  Mr. Roque also alleges that he has been unable to find other caregivers or nurses to replace Ms. Mohamud because of the COVID-19 outbreak. Dkt. # 5 at ¶ 30.

On March 9, 2020, Mr. Roque requested a parking permit from Raven Terrace staff and was denied. Dkt. # 6, Ex. B.  The following day, Mr. Roque contacted an SHA

ORDER - 2

accommodations specialist to request a reasonable accommodation to allow his caregivers to park in the garage. *Id.* The request was denied on the grounds that Mr. Roque's caregivers are not disabled or residents of Raven Terrace. Dkt. # 6, Ex. E.

Since the towing incident, Ms. Mohamud has not been able to regularly bring Mr. Roque food and supplies. As a result, Mr. Roque has "been suffering both physically and emotionally." Dkt. # 5 at ¶ 39. Mr. Roque alleges that he has gone for days without eating, surviving on bread and condiments alone. *Id.* at ¶ 40. Additionally, Mr. Roque represents that his skin is deteriorating due to unrelieved pressure. Dkt. # 5 at ¶ 41. Both Mr. Roque and his physician assert that he could suffer serious or dire health consequences if he does not receive regular care. Dkt. # 5 at ¶ 45; Dkt. # 3 at ¶ 8.

On April 30, 2020, Mr. Roque filed a complaint against SHA alleging violations of the Americans with Disabilities Act ("ADA"), Fair Housing Act, Washington Law Against Discrimination, Rehabilitation Act, Residential Landlord Tenant Act, and seeking declaratory and injunctive relief. *See generally* Dkt. # 1. Mr. Roque also filed the instant motion for a temporary restraining order and preliminary injunction. Dkt. # 2.

## II.   LEGAL STANDARD

A TRO is "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain a TRO, Plaintiff must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). "Motions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted." Local Rules W.D. Wash. LCR 65(b)(1). Mr. Roque's counsel attests that she has repeatedly attempted to notify employees of SHA and Raven Terrace of this action and the pending motion but has

ORDER - 3

received no response. Dkt. # 6, Ex. H; Dkt. # 12. It also appears that the building manager of Raven Terrace was formally served a copy of the complaint and motion on May 1, 2020. Dkt. # 10. Although the Court remains skeptical as to whether service has been properly effectuated, given the risk of immediate and irreparable injury to Mr. Roque, the Court finds it is appropriate to issue this order under Fed. R. Civ. P. 65(b).

### III.  DISUCSSION

Having reviewed the motion, the complaint, the relevant portions of the record, and the applicable law, the Court concludes that Mr. Roque has carried his burden to warrant injunctive relief. Mr. Roque has submitted sufficient evidence to show that he has a qualifying disability and that the Seattle Housing Authority has excluded his "participation in" the use of the Raven Terrace garage because of his disability. *Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (holding that to establish a violation of Title II of the ADA, a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities, and (3) such exclusion or discrimination was by reason of his disability.). Mr. Roque has also sufficiently shown that SHA denied his repeated requests for a reasonable accommodation to allow his caregivers to use the parking space that he is not physically capable of using himself. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002) (holding that a reasonable accommodation need only "seem[] reasonable on its face); 28 C.F.R. § 35.130(b)(7). Accordingly, for the limited purposes of this motion, Mr. Roque has established a sufficient likelihood of success on the merits.[1]

---

[1] The Court's consideration of Mr. Roque's likelihood of success on the merits of his claims, for the very limited purpose of deciding this motion, should in no way be interpreted as a final determination on the merits of Mr. Roque's request for a preliminary injunction or his case in chief.

ORDER - 4

Mr. Roque easily meets his burden of showing irreparable harm. The declarations of Mr. Roque and his physician suggest a very real threat to Mr. Roque's physical and emotional health if his caregivers and nurses are not able to provide regular care. Dkt. # 5 at ¶ 45; Dkt. # 3 at ¶ 8. The risk of harm is immediate, continuing, and intensified by the current COVID-19 crisis. The balance of equities also weighs in favor of a temporary restraining order. In granting Mr. Roque's motion, the Court is maintaining what appears to have been the status quo until very recently. And, the serious risks to Mr. Roque's health and wellbeing far outweigh any potential inconvenience to SHA that may result from providing his caregivers a parking spot. Lastly, the Court finds that the public interest embodied in the ADA, as well as the equities in this matter, warrant granting a temporary restraining order. 42 U.S.C. § 12101(a)(2).

### IV.   CONCLUSION

For the above reasons, the Court **GRANTS** Plaintiff's motion and issues the following temporary restraining order, effective upon service of this Order:

1. Defendant Seattle Housing Authority, including any of its officers, agents, servants, employees, attorneys and other persons or entities in active concert or participation with them are enjoined from directly or indirectly:

    a) Towing, ticketing, or otherwise prohibiting Tony Roque's care provider, Fatuma Mohamud, and visiting nurses from parking in the parking garage at Raven Terrace; and are directed to:

    b) Provide Tony Roque's care provider and visiting nurses with full and unrestricted access to park in the Raven Terrace parking garage, including issuing any required permits.

Although a bond is normally required when granting injunctive relief, the Court declines to require a bond at this point in time. *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999) ("The district court is afforded wide discretion in setting the amount

ORDER - 5

of the bond"); *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (finding that the bond amount may be zero if there is no evidence the party will suffer damages from the injunction). The Court will revisit the issue of a bond following a determination on Plaintiff's motion for a preliminary injunction.

The temporary restraining order will become effective upon formal service of this Order and will remain in effect for **14 (fourteen) days**, unless extended by order of the Court.  Finally, Defendant is **ORDERED TO SHOW CAUSE** on or before **May 18, 2020**, why the Court should not convert this temporary restraining order into a preliminary injunction.  Plaintiff may file a reply on or before **May 22, 2020**.

DATED this 4th day of May, 2020.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER - 6