UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

_____

TONY ROQUE,                        )
                                   ) CASE NO. C20-658-RAJ
           Plaintiff,              )
                                   ) Seattle, Washington
v.                                 )
                                   ) June 2, 2020
SEATTLE HOUSING AUTHORITY,         ) 2:00 p.m.
                                   )
           Defendant.              ) TELEPHONIC
                                   ) STATUS CONFERENCE
                                   )
_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE RICHARD A. JONES
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | BONNIE FONG<br>Washington Civil and Disability Advocate<br>4115 Roosevelt Way NE, Suite B<br>Seattle, WA 98105 |
| For the Defendant: | LEIGH ANN COLLINGS TIFT<br>Seattle Housing Authority<br>Office of the General Counsel<br>190 Queen Anne Avenue North<br>Seattle, WA 98109 |
| Reported by: | NANCY L. BAUER, CCR, RPR<br>Federal Court Reporter<br>700 Stewart Street, Suite 17205<br>Seattle, WA 98101<br>nancy_bauer@wawd.uscourts.gov |

|     |                                                                 |
| --- | --------------------------------------------------------------- |
| 1   | PROCEEDINGS                                                     |
| 2   |                                                                 |
| 3   | THE COURT:  Good afternoon.  This is Judge Jones.               |
| 4   | Please call the calendar.                                       |
| 5   | THE CLERK:  We are here in the matter of Tony Roque             |
| 6   | versus Seattle Housing Authority, Cause No. C20-658-RAJ.        |
| 7   | Counsel, please make your appearances for the record.           |
| 8   | MS. FONG:  Good afternoon.  This is Bonnie Fong for             |
| 9   | the plaintiff.                                                  |
| 10  | THE CLERK:  And for defendant?                                  |
| 11  | MS. TIFT:  Appearing for the Seattle Housing                    |
| 12  | Authority, this is Leigh Ann Tift.                              |
| 13  | THE CLERK:  Thank you.  And we also have our --                 |
| 14  | THE COURT:  And the last name for the defense counsel?          |
| 15  | MS. TIFT:  Tift, T-i-f-t.                                       |
| 16  | THE CLERK:  And, Your Honor, we also have Nancy Bauer,          |
| 17  | our court reporter, on the line.                                |
| 18  | THE COURT:  All right.  Thank you.                              |
| 19  | If, for any reason, the parties are unable to hear the          |
| 20  | court, please ask me to repeat the question or interrupt the    |
| 21  | proceeding immediately.  If either myself or the parties are    |
| 22  | going too quickly, I'll ask the court reporter to indicate that |
| 23  | we need to slow down or restate.  Also, I'll ask the parties to |
| 24  | state who is speaking at the time, but I think that will be     |
| 25  | readily obvious because I'll be calling on you individually.    |

1     It is my understanding that the Seattle Housing Authority
2 will be holding an appeal hearing next Monday, June 8th.  My
3 first question to counsel for the Seattle Housing Authority, is
4 that hearing still on schedule?
5          MS. TIFT:  It is, Your Honor.
6          THE COURT:  And when do you think the likely outcome
7 or resolution of that hearing will be taking place?
8          MS. TIFT:  Our general counsel, Mr. Fearn, typically
9 announces that a decision will be made by the court within two
10 weeks, and he holds to that.
11          THE COURT:  Okay.  I didn't hear the last part.  He
12 hopes...?
13          MS. TIFT:  Oh.  He holds to that schedule.
14          THE COURT:  Okay.  Then if that's the case, and that
15 hearing takes place in two weeks, that will either be June 22nd
16 or June 23rd.  Would that be a fair assessment?
17          MS. TIFT:  Yes.  This is Leigh Ann Tift.
18          THE COURT:  Okay.  And, counsel, I've never
19 participated in that type of hearing in my past practices.  Can
20 you share with the court what will be expected and what will be
21 received by way of evidence?
22          MS. TIFT:  Yes, I can, Your Honor.  This is Leigh Ann
23 Tift again.
24       As I understand it, Ms. Fong [inaudible] --
25          THE COURT:  You cut out, counsel.

1    MS. FONG: -- are able to be appearing.
2    What typically happens is that Mr. Fearn asks what does --
3    if there's an appeal, what does the appellant want him to
4    understand that was not clear from the previous request for an
5    accommodation. So it's typically an opportunity for the
6    appellant to explain to the committee what might have been
7    missed in the original request for accommodation, the
8    consideration of the accommodation, or any other kind of
9    information that the appellant has that would help to make a
10   better decision or come to a more amenable decision.
11   THE COURT: And how many people are on that panel?
12   MS. TIFT: There is Mr. Fearn. There is a disability
13   advocate from the public. His name escapes me right now. As
14   soon as I stop talking, I'll think of it. There is a
15   representative from the Housing Choice Vouchers Department.
16   There is a representative from the Housing operations
17   department, and there is a representative from SHA Human
18   Resources Department. Those are the voting members.
19   Ms. Stegich, who is the ADA coordinator, is present, and
20   the person who actually puts in typical work orders or who makes
21   typical arrangements -- his name is Derek Whitney -- is also
22   present, but neither of them have a vote.
23   THE COURT: And other than --
24   MS. TIFT: Jerry Jones, by the way, is the community
25   representative to the Committee, yes.

1           THE COURT:  Okay.  Thank you.
2        And other than Mr. Roque's statement to the housing board,
3   how many other individuals will give testimony or is expected to
4   be in court, or is it just legal argument?
5           MS. TIFT:  It's entirely up to Mr. Roque.  If he wants
6   to add additional facts, if he wants to bring more medical
7   information, if he wants to provide information, for example,
8   from Ms. Mohamud, he's entitled to do that, and we would accept
9   it, of course, in writing or via telephone.
10          THE COURT:  And another question.  I'm not asking you
11  for the specific status, but is there any discussions about
12  trying to informally resolve this conflict, short of having a
13  hearing on Monday?
14          MS. TIFT:  I understand that Ms. Fong tried to speak
15  with our ADA coordinator and wanted her to negotiate a change in
16  the rules.  That happened about -- that happened, I guess, just
17  before the lawsuit was filed.
18          THE COURT:  All right.  And let me hear from counsel.
19  Ms. Fong?
20          MS. FONG:  Yes, Your Honor?
21          THE COURT:  Do you have any idea of what you're
22  expecting for purposes of the hearing or what you're planning on
23  presenting by way of evidence?
24          MS. FONG:  No.  What Ms. Tift described is my
25  understanding of what this hearing will be.

1   I have not spoken with my client as to what he would like
2   to put additionally on the record.  But, you know, they have
3   already received the doctor's note from my client's doctor, as
4   well as his case manager.
5       So I'm not completely certain as to whether we're going to
6   be submitting any additional evidence from what they've already
7   had, but if they did, it would just be clarifying letters from
8   his doctors or from his case manager, which they already have.
9           THE COURT:  All right.  Then what I'm going to ask the
10  parties to do, if the expectation is that this hearing will have
11  resolution by the 22nd or 23rd, there appears to be no reason
12  why, by June 25, the parties couldn't provide this court a joint
13  status report submission as to the outcome.
14      Ms. Tift, would you agree to that?
15          MS. TIFT:  Yes, Your Honor.
16          THE COURT:  Ms. Fong, would you agree with that?
17          MS. FONG:  Yes, Your Honor.
18          THE COURT:  Okay.  So 6/25 by three o'clock p.m., a
19  joint status report is due.
20      Next, counsel, is the motion for a preliminary injunction.
21  I'd like to have a brief conversation about that.
22      As you know, the temporary restraining order is still in
23  place subject to -- and will remain in place with the hearing
24  coming up on the following -- coming Monday.
25      The court also has an opportunity to rule on the

preliminary injunction, but I'll tell you right now I'm not going to do anything with that until I hear the outcome of the pending appeal. That means the TRO will remain in full force and effect.

(Dropped-call chime.)

THE COURT: Now, one of the questions I wanted to clarify about the TRO remaining in effect -- and, first of all, I trust that there's no objection from counsel for the plaintiff or from the defendant for the TRO, as currently drafted, remaining in place until the court has an opportunity to finalize matters on the preliminary injunction.

Is that agreed, Ms. Fong?

MS. FONG: Yes, that's correct, Your Honor.

THE COURT: And, Ms. Tift, would you agree to the same? Ms. Tift?

THE CLERK: Your Honor, this is Victoria. I heard a chime, which indicates that she might have dropped out. She may be calling back in.

THE COURT: All right. I'll give her a chance to call back in.

MS. TIFT: Your Honor, I very much apologize, but I lost my phone call.

THE COURT: Okay. That's fine.

Counsel, what's the last thing you heard being said by the court or by Ms. Fong?

1     MS. TIFT:  You were telling us that you are not going
2  to rule on the preliminary injunction until you get, as I
3  understand it, the status report on June 25.
4     THE COURT:  That's correct.
5     The next question I asked, and Ms. Fong responded, is if
6  there was any outstanding objections, other than what's already
7  been noted, about the TRO remaining in place until the outcome
8  of the appeal and the outcome of the preliminary injunction; is
9  that agreed, counsel?
10     MS. TIFT:  It is.
11     THE COURT:  And I just want to clarify, too -- I don't
12  know if I need to have a clarifying order.  I don't think that I
13  do.  But based upon my understanding of the current pleading,
14  that there's only one reserved space for all caregivers of
15  Mr. Roque to share.  Is that your understanding, Ms. Fong?
16     MS. FONG:  No, that is not my understanding at the
17  moment, Your Honor.
18     Right now, Mr. Roque's caregivers have access to the
19  garage, but they don't have a reserved space.  So if it is full,
20  then they cannot park in the parking garage.
21     THE COURT:  All right.  And, Ms. Tift, what
22  arrangements need to be made so that we have a spot to
23  accommodate the court's order directing that there be reserved
24  space available for the caregivers?
25     MS. TIFT:  With respect, Your Honor, the court's

1  initial order was that we allow access, and the number of people
2  that have been something of a moving a target, we would point
3  out.
4      Anyone that Ms. Fong tells us is a caregiver is provided
5  access to the garage.  Currently, there are four people that
6  she's identified that are to have access to the garage.
7      THE COURT:  And how many spots are there downstairs?
8  How many parking spaces available in total?
9      MS. TIFT:  There are -- I'm going -- I don't have my
10 paperwork.  I believe there are 27 that are not reserved, two
11 are reserved as handicapped, two are reserved for police, two
12 are reserved, by contract, for caregivers providing for
13 residents.  I believe it's 27 that are available on a
14 first-come, first-served basis for all residents.
15      THE COURT:  All right.  Then what can be done to
16 accommodate the need for providing space for the caregivers so
17 that you don't have multiple people occupying multiple spaces at
18 the same time, because I think that's one of the main issues in
19 this case.
20      MS. TIFT:  This is Leigh Ann Tift.  Are you speaking
21 to me, Your Honor?
22      THE COURT:  Yes.
23      MS. TIFT:  What can we do to make sure the caregivers
24 have space?
25      THE COURT:  Yes.

1       MS. TIFT: That's a challenge. We, basically, have to
2  take spaces away from residents.
3       THE COURT: Well, let me hear from Ms. Fong.
4    How often are the caregivers coming in, and what hours are
5  they coming in?
6       MS. FONG: They're coming in at different times of the
7  day. He typically -- during the coronavirus, during its peak,
8  he would only have one, who would stay a very long time. Now
9  they have been able to obtain a second one for an evening shift,
10 and she has had difficulty getting access into the garage at
11 that time.
12   And then sometimes he has visiting nurses and physical
13 therapists, caregivers, who come in usually at the noontime,
14 sometimes afternoon, but they are typically only there for an
15 hour, more or less. So typically he only has one person there,
16 but sometimes he has two.
17   They are willing to share a spot, so they can prioritize
18 who has access to him at the time whenever he needs it.
19       THE COURT: Okay. And, Ms. Fong, do you know who all
20 these people are by name and contact?
21       MS. FONG: Yes. I mean, I don't know them personally,
22 but do know their names.
23       THE COURT: Is there some reason why these individuals
24 can't take the cell phone numbers of each other, and when they
25 are en route or about to come, exchange places, or if they're

1  going to come, that no more than one person could be occupying
2  the space?  If there's only 27 spots, and you have identified
3  the possibility of four, realistically three if they're split
4  shifts, is there some reason why they can't coordinate when they
5  arrive and depart so there's only one space?  Otherwise, it does
6  become burdensome with the limited number of spaces available.
7          MS. FONG:  I don't see a problem with that.  My
8  client, Tony Roque, he typically knows exactly when they're
9  coming in and is communicating with them right before they come,
10 and so I think that he could easily coordinate that with his
11 care providers.
12         THE COURT:  And, Ms. Tift, I'm assuming the signage
13 downstairs would either have a handicapped designation or
14 reserved for law enforcement that would be just be the mere
15 placement of a temporary sign for reserving the spot.  Would you
16 agree, counsel?
17         MS. TIFT:  [Inaudible].
18         THE COURT:  Ms. Tift?
19         MS. TIFT:  Can you hear me, sir?
20         THE COURT:  You are cutting out, but now I can hear
21 you.
22         MS. TIFT:  Okay.  [Inaudible].
23              [Court reporter interruption.]
24         MS. TIFT:  Of course, we are compliant with the
25 court's temporary restraining order.  If you are telling us that

1  we need to put signage up and reserve a space for Mr. Roque's
2  caregiver, pending a decision -- [inaudible].
3          THE COURT:  Ms. Tift, you keep cutting out.  Are you
4  on a cell phone?
5          MS. TIFT:  Let me see.  I'm working from home.  Is
6  this better?
7          THE COURT:  Do you have ear buds in, or are you
8  speaking directly into the phone?
9          MS. TIFT:  I'm speaking directly into the phone.
10         THE COURT:  Is it on speaker?
11         MS. TIFT:  No.
12         THE COURT:  Okay.  Well, let's try again.
13         MS. TIFT:  Okay.
14     If you're telling us that we need to put signage and
15 reserve a space for him, we will, of course, be compliant.  But
16 it does create problems down the line, because Mr. Roque is not
17 the only person with a caregiver.
18         THE COURT:  Well, the challenge, though, is Mr. Roque
19 is the only one that currently has litigation pending before
20 this court.
21         MS. TIFT:  I understand.
22         THE COURT:  I can't anticipate what's going to come
23 down the road.  So I have to provide relief according to what's
24 available.
25     And so I think, at least for this short duration, I'm going

1  to issue a clarifying order directing that the Housing Authority
2  place signage that is available for Mr. Roque's caregivers.  You
3  don't have to call him out by name, because I don't want any ill
4  will towards Mr. Roque because of the fact that he's filed a
5  complaint and is in litigation right now.  But if you could
6  indicate it is reserved, whatever signage you believe is
7  appropriate and necessary.
8       Mr. Roque needs to understand that he needs to coordinate
9  that there's -- no more than one caregiver is going to be
10 permitted in that parking stall at any given time.  I don't want
11 a burden to be placed on the balance of the 27 available spots
12 with multiple individuals coming in, whether they're there for
13 20 minutes, a half hour, or a full shift.  I want to make sure
14 that that's clear, and I'm going to issue an order to that
15 effect.
16      Any need for clarification from the court on that, from
17 either party?
18           MS. TIFT:  No, Your Honor.
19           MS. FONG:  No, Your Honor.
20           THE COURT:  All right.
21      Next, counsel, is, my understanding is an outstanding issue
22 is that Mr. Roque didn't exhaust his administrative remedies.
23 Is that still an outstanding issue?
24           MS. TIFT:  This is Leigh Ann Tift.  I don't believe
25 it's a material issue, because we're going to wait for the

1  appeal process to complete, and then file the joint status
2  report.
3         THE COURT:  And you'll clarify at that point in time
4  if that's still an issue?
5         MS. TIFT:  Yes.
6         THE COURT:  Okay.  That's appreciated.
7      Second, the issue of Seattle Housing Authority.  My
8  understanding is they'll contend that it's not been properly
9  served.
10     So my first question is:  I understand that the Seattle
11 Housing Authority offices have been closed due to COVID-19.  Is
12 that an accurate statement?
13        MS. TIFT:  It is a partially accurate statement.  The
14 offices are closed for direct conversations with the public.
15 The office itself is not closed.  We have someone who sits in
16 the lobby and accepts packages and conducts Authority business
17 without -- but we don't meet with applicants, residents, and
18 clients at this time.  Also, as with every other employer in
19 Seattle, everyone is encouraged to work at home, to the extent
20 that they can, but the office is absolutely not closed.
21        THE COURT:  Is there an outstanding issue of service?
22        MS. TIFT:  Pardon me?
23        THE COURT:  Is the issue of Seattle Housing Authority
24 being properly served still an outstanding issue?
25        MS. TIFT:  It is.

1     THE COURT: Then if you could clarify for the court
2 what individual or means an individual is permitted to serve
3 with the limited opening that you currently have at your office?
4 Is this person sitting at a desk, can they be the recipient of
5 service?
6     MS. TIFT: She can call a person who is prepared to
7 accept service. She knows who to call.
8     The other thing, though, Your Honor, is, there is a simple
9 process, under the court rules, that has never even been
10 considered by plaintiff's counsel.
11     THE COURT: Is there some reason, counsel, that the
12 two of you can't get together and have a conversation to work
13 this out? Because this is a process that rarely has to come to
14 the court's attention, that pops up occasionally, but on
15 something as straightforward as this case involves, particularly
16 in light of the COVID-19 restrictions, I can't see why a brief
17 meet-and-confer conversation between the parties can't resolve
18 the issue of service.
19     Have the two of you attempted to meet and confer to talk
20 about what can be done to achieve service so that we don't have
21 to deal with that issue as well?
22     MS. FONG: This is Bonnie Fong, Your Honor. We have
23 not, but I would be more than willing to meet and confer with
24 Ms. Tift.
25     THE COURT: All right. Ms. Tift, is there any reason

1   why you can't participate in that as well?

2             MS. TIFT:  Of course not.

3             THE COURT:  All right.  Then I'm going to direct the

4   parties to meet and confer between now and the time you file

5   your joint status report.

6       If you resolve your differences before that, that's

7   perfectly fine with the court.  And to be honest with you, I

8   don't see why, at the conclusion of this telephone call, the two

9   of you can't make arrangements to contact each other and resolve

10  your differences, and merely report back to the court that the

11  service issue is still outstanding or if it's been resolved.

12      Those are the only issues that I needed to address today,

13  so I'll begin at the beginning.  Ms. Fong, is there anything

14  else that we need to address at this point in time?

15            MS. FONG:  No, Your Honor.  I do have a question,

16  though.

17      Regarding the service, would you like us to make that a

18  part of our joint status report that's due on the 25th, or would

19  you like us to update you closer to that date?

20            THE COURT:  If you resolve that, you don't have to

21  wait until the 25th, but if for some reason you can't meet and

22  confer between now and then, which I don't know why you'd have

23  to wait until then, but you can give the court separate notice

24  if you resolve the service issue, and if not, then the very

25  latest will be on the date that I've identified for the joint

1  status report.
2       MS. FONG:  Okay.  Thank you for that clarification,
3  Your Honor.
4       THE COURT:  And, Ms. Tift, how about you?  Any
5  additional issues that can be addressed by the court?
6       MS. TIFT:  No, Your Honor.
7       THE COURT:  All right.  Then we'll be in recess.
8  Thank you.
9
10           (Proceedings concluded at 2:26 p.m.)

C E R T I F I C A T E

       I, Nancy L. Bauer, CCR, RPR, Court Reporter for the United States District Court in the Western District of Washington at Seattle, do hereby certify that I was present in court during the foregoing matter and reported said proceedings stenographically.

       I further certify that thereafter, I have caused said stenographic notes to be transcribed under my direction and that the foregoing pages are a true and accurate transcription to the best of my ability.

       Dated this 8th day of June 2020.

       /S/  Nancy L. Bauer

       Nancy L. Bauer, CCR, RPR
       Official Court Reporter