1        UNITED STATES DISTRICT COURT

2    WESTERN DISTRICT OF WASHINGTON AT SEATTLE

3   _____
                               )
4    TONY ROQUE, a Washington     ) C20-00658-RAJ
     Resident,                   )
5                               ) SEATTLE, WASHINGTON
                  Plaintiff,     )
6                               ) June 17, 2020 -
     v.                          ) 2:00 P.M.
7                               )
     SEATTLE HOUSING AUTHORITY, a )
8    Public Entity,              ) TELEPHONIC CONFERENCE
                               )
9              Defendant.        )

10  _____

11        VERBATIM REPORT OF PROCEEDINGS
       BEFORE THE HONORABLE RICHARD A. JONES
12        UNITED STATES DISTRICT JUDGE

13  _____

14  APPEARANCES:

15  For the Plaintiff:      Bonnie Fong
                            Conrad Reynoldson
16                          Washington Civil and Disability
                            Advocate
17                          4115 Roosevelt Way N.E.
                            Suite B
18                          Seattle, WA  98105

19                          Thomas P. Zito
                            Disability Rights Advocates
20                          2001 Center St.
                            Fourth Floor
21                          Berkeley, CA 94704

22

23  For the Defendant:      Leigh Ann Collings Tift
                            Seattle Housing Authority
24                          Office of the General Counsel
                            190 Queen Anne Avenue N.
25                          Seattle, WA  98109

Proceedings stenographically reported and transcript produced with computer-aided technology

1    THE COURT:  Good afternoon.  This is Judge Jones calling

2  in.

3      Ms. Ericksen, would you please call the case?

4    THE CLERK:  We are here in the matter of Tony Roque

5  versus Seattle Housing Authority, Cause No. C20-658-RAJ.

6      If counsel first for the plaintiff could please identify

7  yourself for the record?

8    MS. FONG:  Good afternoon.  Bonnie Fong for plaintiff.

9    MR. ZITO:  Good afternoon, Your Honor.  Thomas Zito also

10  for plaintiff.

11    MR. REYNOLDSON:  Good afternoon, Your Honor.  This is

12  Conrad Reynoldson for plaintiff as well.

13    MS. TIFT:  Your Honor, this is Leigh Ann Tift --  I'm so

14  sorry.

15    THE CLERK:  No.  Go ahead, Ms. Tift.

16    MS. TIFT:  For the Seattle Housing Authority, this is

17  Leigh Ann Tift.

18    THE CLERK:  And, Your Honor, we also have Nickie Drury,

19  our court reporter, on the line.

20    THE COURT:  All right.  Thank you.  Thank you all for

21  being here this afternoon.

22    I moved this up to expedite, hopefully, resolution of this

23  issue.  It appears some issues have been raised regarding

24  compliance.  Let me hear first from plaintiff's counsel.  And

25  before you speak, identify yourself for the benefit of the court

1   reporter and the Court.

2           MS. FONG:  Thank you, Your Honor.  This is Bonnie Fong

3   for the plaintiff.

4       Yes.  Essentially, Your Honor, Tony has had difficulty even

5   parking in the regular spot because --

6           THE COURT REPORTER:  I'm sorry.  I'm sorry.  Excuse me.

7   Ms. Fong, can you repeat that please?  You were cutting out.

8           MS. FONG:  Tony Roque, the plaintiff in this matter, he

9   parked in the spot that the --

10          THE COURT REPORTER:  I'm sorry, Your Honor.  Your Honor,

11  this is Nickie.  My phone is fine, I have a lot of bars, but I

12  cannot hear Ms. Fong.  She keeps cutting out.

13          THE COURT:  Counsel, do you --

14          MS. FONG:  I'm on a cell phone.

15          THE COURT:  Do you have access to a landline or a

16  different cell phone?

17          MS. FONG:  I do.  If we could -- I'm just moving into a

18  better location in my house right now.  Could we possibly try

19  this one more time?

20          THE COURT REPORTER:  Absolutely.  Please.

21          THE COURT:  Yes.

22      Are you in a new location now?

23          MS. FONG:  Yes, I am.

24          THE COURT:  All right.  Let's try it.

25          MS. FONG:  Okay.  Thank you.

1          THE COURT:  Let's try a test {undecipherable.}

2          THE COURT REPORTER:  I'm sorry, Your Honor?

3          THE COURT:  I'm asking counsel not to make statements

4    about the case, but just to do a test to make sure that we can

5    hear her.

6          MS. FONG:  Oh.  Test, test.  Can you hear me, Your

7    Honor, and Nickie?

8          THE COURT REPORTER:  This is the court reporter.  I can

9    hear you fine now.  Thank you.

10         MS. FONG:  Okay.  Great.

11         THE COURT:  Thank you.

12         MS. FONG:  Thank you.

13    Yes.  Plaintiff in this case, Mr. Rogue, has had difficulty

14    parking in his parking space that SHA has reserved for him under

15    the court order.  We have reached out to the Seattle Housing

16    Authority every time this has happened, and, essentially, we're

17    not getting any assistance in helping him get access to his

18    reserved spot.  We have asked them to enforce it through several

19    means, and they have been not helpful in the matter, and so we're

20    asking the Court to assist us in enforcing this reserved parking

21    space.

22         THE COURT:  And, counsel, what do you mean by way of

23    assistance from the Court?  The Court has already issued an

24    order.

25         MS. FONG:  Yes, Your Honor.  Well, in this case we're

1   asking for you to direct SHA to do something to help us gain

2   access to this reserved spot.  Again, we've asked them to tow

3   the cars, as they have towed the care providers' for our client

4   before, and they're not willing to do that.  We've asked them to

5   identify the cars that are parking in the parking space so that

6   we can identify whether they are employees or if they are other

7   residents, and so we can either pinpoint whether they just need a

8   bigger and more obvious sign, or if SHA employees think that that

9   space is reserved for SHA purposes, then they simply need to

10   train their staff on the matter.  But right now we don't have any

11   information as to what is exactly causing the problem.  And so

12   we're asking the Court to direct them to assist us in helping him

13   gain access to this reserved spot.

14           THE COURT:  And, counsel, have you inspected the sign?

15           MS. FONG:  No.  We -- not personally, no.

16           THE COURT:  We have got three lawyers on the phone.

17   Have any of you gone up there and inspected the sign to see if

18   it's adequate or inadequate or the deficiency?

19           MS. FONG:  We have seen pictures of it, Your Honor, and

20   it is a single eight-and-a-half-by-eleven sheet of paper that

21   says "Reserved" on it, and then there's a cone that my client's

22   care providers are using but other residents are moving.

23     But, no, due to the stay-at-home order, we're still

24   social-distancing.

25           THE COURT:  Does it say reserved for a particular

1  individual on the sign?

2          MS. FONG:  No.  It just says "Reserved."

3          THE COURT:  What color is the sign, or the coloration of

4  the letters on the sign?

5          MS. FONG:  It's green with black lettering, I believe.

6          THE COURT:  And what height is it placed above the floor

7  level or the ground level?

8          MS. FONG:  It looks -- in the picture, it appears to be

9  four or five feet above the ground.  And this is also in the

10 exhibit that I submitted to the Court.  It says "Reserved

11 Parking" on it.

12         THE COURT:  Okay.

13    And, counsel, when you say -- they work for your client,

14 Tony -- but when you say they're having problems, what specifics

15 do you have by the number of times or the frequency of times that

16 that spot has not been available?

17         MS. FONG:  It's been mostly unavailable to my client.

18 We got access to the reserved spot on the 4th, and we've reported

19 to SHA about six times that a car has been parked there.  And

20 many of those times they were parked there overnight and at times

21 even more than one night.  So it's been frequent and it's been a

22 long time that cars have been parked there.

23         THE COURT:  And you say you have been in contact with

24 Seattle Housing Authority.  Can you identify the persons you have

25 had contact with?

1          MS. FONG:  Yes.  Ms. Tift.

2          THE COURT:  And what has been the response on these

3     calls or contacts with her?

4          MS. FONG:  She said that there has -- that they're not

5     adequately staffed to enforce the parking, and so they're unable

6     to enforce the reserved parking.

7          THE COURT:  Okay.  All right.  Anything else you wish to

8     advise the Court about?

9          MS. FONG:  Yes, Your Honor.  We're just asking that SHA

10    not do nothing in this situation.  It's been pretty difficult for

11    our client to have a car parked there for multiple days and not

12    have any cooperation from SHA in this matter.

13         THE COURT:  And do you know what the current status of

14    the appeal was or is?

15         MS. FONG:  Yes.  We just got notice about a half an hour

16    ago, or 40 minutes ago, that they denied him again a parking

17    space.  So we will be filing the joint status report, but we

18    haven't had an opportunity to fully digest it or even consult

19    with our client yet.

20         THE COURT:  All right.  Thank you.

21      I will hear from counsel for the defendant at this time,

22    Ms. Tift.

23         MS. TIFT:  First of all -- thank you, Your Honor -- can

24    you hear me okay?

25         THE COURT:  Yes.

1     Can the court reporter?  Nickie?

2          THE COURT REPORTER:  Yes, I can.  Thank you.

3          MS. TIFT:  Okay.

4          THE COURT:  Okay.  Thank you.

5          MS. TIFT:  So a few things that we're missing are these

6     facts.  The notice that we get from Ms. Fong about parking

7     infractions generally are in the evening or over the weekend.  It

8     is true that Ms. Fong gave me notice that there was a car parked

9     for several days in the reserved space, but that was over the

10    weekend, and the building -- we don't have staff in the offices

11    on the weekends and we don't have staff in the offices after

12    business hours.

13         Last Friday, I received a message from Ms. Fong, and she said

14    someone was parked in Mr. Rogue's space, but our offices were

15    closed at one o'clock so that people could participate in the

16    silent march.  So I'm getting these notices and responding to

17    them and telling her there's nothing I can do at the time because

18    there is literally no one in the building who's available to call

19    a tow truck.

20         So that sort of establishes that --  What we're trying to

21    do --  The Court ordered us to reserve space.  I indicated to

22    Ms. Fong and Mr. Reynoldson that what we wanted to do was order a

23    sign.  Mr. Reynoldson said no, he wanted a sign up that day.  So

24    it's true, there's a laminated piece of paper that says "Reserved

25    Parking."  You directed that the name not be used, and so it's

1    not.  We also put a cone in front of the parking space.  We took

2    a picture of it, forwarded it to Mr. Roque, and said, "Please

3    tell your care providers this is what they should look for.  It's

4    Space No. 25."

5        It's true that residents move the cone and park in the space,

6    but they're doing this at night and on weekends.  And there's

7    just -- there's just no one there to respond to a request for

8    somebody to go up and do something about the parking.

9        What we have as a practice in that building is we give a

10   warning before we issue -- before we have a car towed.  And we

11   are extremely reluctant to have resident cars towed, and the

12   reason is -- and I have explained this to Ms. Fong as well -- an

13   average tow fee is $300.  The average monthly rent for a resident

14   at Raven Terrace is $250.  When we tow those cars, we're loading

15   the residents with debt that we know they can't pay.  So we try

16   to enforce cooperation through warnings and notices before we

17   take the extreme step of towing cars.  And these have been

18   multiple offenders, not the same person.

19       Ms. Fong notified me yesterday that there was someone parked

20   in the parking space.  We went out and put a notice there.  But,

21   you know, even if we were to call a tow truck, they come when

22   they come, they're not instantaneous.  So that is a problem as

23   well.

24       And while -- I just want to say that Ms. Fong is correct

25   that the ADA Committee's decision is that providing him a

1   reserved space in Raven Terrace is not going to be workable for

2   all of the reasons that we have seen so far.  I also wanted to

3   add that due to the stay-at-home order, we're not allowed to have

4   as many people in the office as we normally would.  So the office

5   at Raven Terrace has one-third -- at any given time one-third the

6   number of people that it usually would.  So in addition to just

7   the regular problems, we have limited staffing as a consequence

8   of COVID.

9        So what we did instead, what the ADA Committee decision said

10  is, if Mr. Rogue wants to move to a different property, we will

11  transfer him.  That was the ADA decision.  The accommodation

12  that's being offered is, we will transfer him to another property

13  where they do have more adequate parking and he can have a

14  specific assigned space.

15       THE COURT:  Okay.  Do you know if there's any response

16  provided by your client at that time or what its current position

17  is regarding that proposal by the ADA Committee?

18       MS. TIFT:  Your Honor, in fairness -- this is Leigh Ann

19  Tift, I'm sorry -- in fairness, they did just get it just a

20  little bit ago.

21       THE COURT:  Okay.  All right.  Well, let me ask you

22  this, counsel.  What other steps do you see, in light of the

23  limitations that you provided to this Court, that could assist in

24  remedying this conflict?

25       MS. TIFT:  We could hire a security guard, but that

1    doesn't seem like that's a reasonable accommodation.  We could --

2    We're not allowed to put cameras up, so that's not going to work.

3    I honestly don't know what else to do.  And on nights and

4    weekends, I mean, we just don't have any people in the building;

5    there's no one to report to.

6         THE COURT:  Okay.  Anything further, counsel?

7    Ms. Tift?

8         MS. TIFT:  No, Your Honor.

9         THE COURT:  Okay.

10   All right.  Ms. Fong, you have heard the limitations in terms

11   of -- from a practical standpoint, the limitations because of

12   COVID-19 with the limited staffing and the nature of the

13   individuals who are violating the parking stall restrictions.  So

14   I'm trying to find a reasonable and rational approach in light of

15   the circumstances.  And just a proposal to the Court to make

16   Seattle Housing Authority make a space available, that's not

17   giving the Court much guidance in terms of a specific remedy, a

18   specific relief.

19   Now, let me hear from you first, before the Court makes any

20   final determination.

21        MS. FONG:  Yes, Your Honor.  This is Bonnie Fong.

22   Here, I -- we would like SHA to do something.  Again, we've

23   requested that they identify which cars have been parking there

24   so that we can get to the bottom of who is parking there, whether

25   it's residents or SHA employees.  If it is indeed residents, then

1  I think a bigger and more obvious sign saying "Reserved Parking

2  Under Court Order," or something to that effect, would give

3  people more notice that this is a reserved spot that's not for

4  them.  And if it is SHA employees, then we can direct SHA to

5  inform and train their employees that this space is not for SHA

6  purposes but for a specific reason.  The cone does say "SHA" on

7  it, which is why I think that it is possible that it's SHA

8  employees.  But without knowing who is parking in the spot, we

9  don't know what the root of the problem is.  I've asked Ms. Tift

10  to --

11      THE COURT:  Let me ask you this, counsel.  Counsel, let

12  me ask you this question.  From a practical standpoint, if these

13  parking violations are occurring after hours, there's no staff on

14  board, how are they to acquire the identification of the license

15  numbers of the vehicles parking there?

16      MS. FONG:  So under SHA policy, they have to provide the

17  license plate numbers and the driver's license of all the

18  individuals who are able to park down there.  That's one of the

19  requirements of being able to park in the parking garage.  So to

20  the extent --

21      THE COURT:  I understand that, counsel.  But I'm saying

22  on Friday -- counsel, I'm saying, on Friday night, it's 8:30 in

23  the evening, SHA employees are gone, there's no staffing to

24  record license numbers.  How are they supposed to know, other

25  than some other person writing down the license numbers?

1          MS. FONG:  Sure.  Well, Your Honor, we have given them

2    the license plate numbers.  And so, you know, even if just doing

3    one search today, for example, on all of the license plate

4    numbers, so we can see if they're residents or if they're

5    employees, I think would help to pinpoint what exactly the

6    problem is, whether we need a bigger sign or if we need to tell

7    SHA employees that this isn't a reserved space for SHA.

8          MS. TIFT:  Your Honor, if I could speak to that, please?

9      I can assure you these are not SHA employees.  SHA employees

10   have two reserved spaces in the building.  They don't park

11   anywhere else.

12         THE COURT:  Okay.  Let me ask counsel for the plaintiff.

13   Ms. Fong, are you amenable to having your client's either

14   apartment number or name on that signage?  Because right now it

15   just says, generically, do not park.  Does that provide any value

16   or assistance?

17         MS. FONG:  Our client has specifically requested that we

18   not put his name or unit number on the space because he fears

19   retaliation from other residents, which is why I was thinking if

20   we say "Reserved Parking Under Court Order Number X," then I

21   think people would have -- would be put on more notice that this

22   is for a specific reason.

23         MR. REYNOLDSON:  This is Conrad Reynoldson.  I did want

24   to add one thing as well.

25     Since we do know the license plate numbers because Mr.

1  Rogue's caregivers take a picture of them, which we can provide,

2  one other potential thing would be that SHA could contact these

3  people individually and just give them a phone call, let them

4  know that this is a reserved spot, they can't park there, and

5  really get into it personally, directly.  And that seems like

6  that might be a way to address this.

7          THE COURT:  And, counsel, when you say a bigger sign,

8  what do you have in mind?

9          MS. FONG:  This is Ms. Fong.  Yes, something that is

10  larger in size.  Perhaps --

11          THE COURT:  That doesn't the help the Court at all.  I

12  need specific dimensions that you are asking of the Court to add.

13          MS. FONG:  Sure, Your Honor.  Well, a

14  three-foot-by-four-foot sign would be bigger and I think more

15  obvious.

16          MR. REYNOLDSON:  This is Conrad Reynoldson.

17      I would also add that if it was something that looked more

18  official.  One example that we sent to you and Ms. Tift was an

19  example of kind of like a red sign that clearly looks official

20  and says, for example, that, you know, violators may be towed.

21          THE COURT:  Okay.  Anything further?

22          MR. ZITO:  Your Honor, this is Tom Zito also for

23  plaintiff.

24      And I leave it to the local co-counsel, but let me know if

25  this is feasible.  Something that occurred to me is the Housing

 1  Authority has said that there are no staff on site during certain

 2  times and whether it would be feasible for our client's

 3  caregivers to park in staff parking if that reserved spot at 25

 4  is occupied by someone else.

 5          MS. TIFT:  Your Honor, this is Ms. Tift.  I'm amenable

 6  to that, but it's kind of the same problem.  All the residents

 7  know that as well.

 8                  {Undecipherable overtalking.)

 9          THE COURT REPORTER:  I'm sorry.  Can you repeat that?

10          MS. TIFT:  Your Honor, this is Leigh Ann Tift.  And

11  we're amenable to having the caregivers park in staff parking

12  spaces after office hours and on weekends.  Of course, that's

13  fine.  But the residents know that as well.

14          THE COURT:  So are you indicating that other residents

15  park in staff parking over the weekend?

16          MS. TIFT:  Yes.

17          THE COURT:  And is that based on personal knowledge,

18  counsel?

19          MS. TIFT:  Based on a conversation I had with

20  Ms. O'Connor, who is the property manager.

21          THE COURT:  All right.  Anything further from the

22  parties?

23          MS. TIFT:  No, Your Honor.  This is Leigh Ann Tift.

24          THE COURT:  All right.

25          MS. FONG:  No, Your Honor.

1           THE COURT:  Ms. Tift, how difficult is it to modify the

2    sign?  And I don't know what the space even looks like or what

3    the wall space looks like.  How difficult is it to create a sign

4    that's larger?  And what will that wall accommodate as far as

5    signage over the parking spot?

6           MS. TIFT:  It's concrete, so you can't -- we would have

7    to -- if you want to put it in permanently, we would have to

8    probably drill into the concrete.

9        We can try a bigger sign.  I'm happy to try that.  I -- we

10   can try.

11          THE COURT:  All right.  Well, let's do this, counsel.

12   Is there any objection that you have to the three-by-four sign

13   for the parking stall sign?

14          MS. TIFT:  No, but -- not at all.  And we can get on

15   that.  But it's not going to be immediate because we're going to

16   probably have to have it either made or laminated professionally,

17   I think.  And the problem last time was Mr. Reynoldson said he

18   wanted it up that day, so we did the best we could on that day.

19   But, yes, I will try.

20          THE COURT:  All right.  I will direct counsel to place

21   larger signage on that.

22          THE CLERK:  Your Honor, just to interrupt, this is

23   Victoria.  We just heard that somebody chimed out.  I just want

24   to make sure Nickie is still on the line before we continue.

25          THE COURT REPORTER:  I am on the line, Victoria.  Thank

1  you very much.

2         THE CLERK:  Okay.  Thank you.

3     Sorry, Your Honor.

4         THE COURT:  Let's confirm with the parties.  Could the

5  parties for the plaintiff please confirm your presence?

6         MS. FONG:  Bonnie Fong is here, Your Honor.

7         MR. REYNOLDSON:  Conrad Reynoldson is here, Your Honor.

8         THE COURT:  And is Mr. Zito present?

9         MR. ZITO:  (No audible response.)

10        THE COURT:  All right.  The Court will continue.  The

11 plaintiff has adequate representation.

12     And I will direct that the respondents, or defendants in this

13 case, provide a sign that's no less than three-by-three in

14 dimensions.  The Court will direct that the signage be in a

15 brighter color than is currently existing, that the signage

16 should indicate that "Violators Will Be Towed," and that the

17 signage should further indicate that this space is reserved

18 pursuant to the case number in this matter.  The Court will

19 further direct that, to the extent known, that Seattle Housing

20 Authority provide the license numbers of any parking violators,

21 and, last, that Seattle Housing Authority issue a memorandum to

22 any employee that will be entitled to park in that parking lot to

23 confirm that they are advised that they are not permitted to park

24 in that reserved stall.  And I think that covers ...  And also

25 that the plaintiff is permitted --

1          THE COURT REPORTER:  I'm sorry, Your Honor.  Could you

2     repeat that last sentence?  "And also that the plaintiff is

3     permitted -- "

4          THE COURT:  And that plaintiff's staffing or care

5     providers may park in reserved staff stalls on weekends after

6     6 p.m.

7        And counsel for the defendant, what time would the staff be

8     in in the morning on Monday?

9          MS. TIFT:  Typically, they're -- someone is there at

10    8:00.

11         THE COURT:  All right.  Then I will say until 6 a.m. on

12    Monday.

13       Any additional concerns or objections to the directives

14    provided by the Court for the plaintiff?

15         MR. REYNOLDSON:  Your Honor, this is Conrad Reynoldson.

16    I guess one thing I wanted to clarify on that would be that if

17    we're clear on the license plate numbers of who is violating

18    this, if we could have SHA directly contact them to let them know

19    that they can't park there.  Because they know who these people

20    are.

21         THE COURT:  Ms. Tift, do you have the capacity to do

22    that?

23         MS. TIFT:  When we find them, we do post a warning for

24    them.  If you're asking that we assign someone to go through the

25    40-plus license plates every time we have a violation, I think

1   that given our COVID-19 staffing, I think that is going to be a

2   problem.  If I add anything, we don't -- we're limping along with

3   one-third the number of people we're supposed to have in the

4   building.

5           THE COURT:  Okay.

6       Well, counsel, I'm not going to require the defendants in

7   this case to undertake that responsibility.  I think the Court's

8   resolution is fair and reasonable in the context of the

9   circumstances.  And when I say "context of the circumstances,"

10  I'm including the COVID-19 stay-at-home restriction.  I think

11  it's a bit unreasonable under these circumstances that limited

12  staff should be expected to engage in full duty when the staffing

13  is reduced as it apparently has been.  So that specific request,

14  counsel, is going to be denied.

15      Any other concerns?  And this would be done by way of an

16  order, a minute order.  That should be sufficient to put the

17  parties on notice of what the Court has permitted and allowed and

18  nothing further.

19      And the Court will direct that the efforts by Seattle Housing

20  Authority is to use all reasonable efforts to prepare and create

21  the sign and have it placed as soon as possible.

22          MS. TIFT:  Yes, Your Honor.

23          THE COURT:  Anything further from plaintiff?

24          MS. FONG:  No, Your Honor.

25          THE COURT:  Anything further from the defendant?

1          MS. TIFT:  No, Your Honor.

2          THE COURT:  All right.

3      And, counsel, the last thing.  This should not be a

4  crisis-level issue that requires court intervention.  Ms. Fong,

5  it's been represented that your calls are either late evenings

6  or on weekends.  I know the issue may be presented to you by your

7  client, but you have to use reason in terms of when you expect an

8  response or a turnaround or an attempt at resolution.  The

9  Appeals Board has made a proposal in terms of relocation, I'm not

10  going to be involved in that at this point in time, but I would

11  ask the parties to use reason and common sense in trying to work

12  out your differences without necessarily having to burden the

13  Court with getting involved at this level for this type of an

14  issue.  It's not that complicated.

15      We will be in recess.

16          MS. TIFT:  Thank you, Your Honor.

17                      (Adjourned.)

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2

3      I, Nickoline M. Drury, RMR, CRR, Court Reporter for the

4  United States District Court in the Western District of

5  Washington at Seattle, do certify that the foregoing is a correct

6  transcript, to the best of my ability, from the record of

7  proceedings in the above-entitled matter.

8

9

10                      /s/ Nickoline Drury

11                      Nickoline Drury

12

13

14

15

16

17

18

19

20

21

22

23

24

25