UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

TONY ROQUE, a Washington Resident,

Plaintiff

v.

SEATTLE HOUSING AUTHORITY, a Public Entity,

Defendant

NO. 2:20-cv-658-RAJ

**FIRST AMENDED COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

**JURY DEMAND**

COMES NOW, Plaintiff, Tony Roque, by and through his attorneys at Washington Civil & Disability Advocate and Disability Rights Advocates, for his Complaint for Declaratory and Injunctive Relief and Damages to state and allege as follows:

## I.     INTRODUCTION

1.     Plaintiff Tony Roque is an individual living with quadriplegia. He requires full-time care in order to assist with Activities of Daily Living ("ADLs") and major life activities, as well as to provide life-sustaining medical care. Seattle Housing Authority ("SHA") discriminates against Mr. Roque by refusing to allow his primary care provider and visiting nurses to park at his apartment complex, despite providing parking for other residents, therefore illegally denying

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **1** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   Mr. Roque a reasonable disability accommodation that is necessary to provide him with an equal

2   opportunity to use and enjoy his dwelling at Raven Terrace. Mr. Roque's caregivers are "on the

3   clock" from the moment they begin working for him (for example, from the moment they begin

4   helping Mr. Roque by shopping for food, medication, or other necessities), and when they are

5   forced to spend time traveling to and from the store by bus or searching for street parking instead

6   of using the Raven Terrace lot, this takes away from the time they could spend caring for Mr.

7   Roque in other ways. Without the help of his care provider and visiting nurses, Mr. Roque is

8   completely alone, and at risk of hospitalization, institutionalization, starvation, serious health

9   complications, and death.

10         *2.*      Mr. Roque brings this action seeking declaratory, injunctive, and equitable relief;

11   compensatory damages; general damages; and attorneys' fees and costs to redress SHA's

12   unlawful discrimination on the basis of disability in violation of Title II of the Americans with

13   Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.;* The Fair Housing Amendments Act

14   ("FHAA"),  42 U.S.C. § 3604 *et seq.*; the Washington Law Against Discrimination ("WLAD"),

15   RCW § 49.60.010 et seq; Section 504 of The Rehabilitation Act U.S.C. § 794 *et seq.* ("Section

16   504"); and Title IV of the ADA, 42 U.S.C.A. § 12201 *et seq.*

17         3.      Mr. Roque also brings this action seeking compensatory and general damages for

18   negligent infliction of emotional distress through the actions of SHA.

19         4.      Based on Mr. Roque's allegations herein, it is evident that the public entity SHA

20   has failed to reasonably accommodate him as is legally required. Mr. Roque brings this action in

21   order to compel SHA to end their discrimination and in order to reasonably accommodate his

22   disability by allowing his care provider and visiting nurses to park on the premises as needed to

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **2** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1  provide Mr. Roque his necessary, life-sustaining care as they did without issue since Mr. Roque

2  moved into his residence in February 2018.

3  ## II.   PARTIES

4      5.   Mr. Tony Roque brings this action and is an individual residing in Washington

5  State. He is 49 years old and has C-6 Quadriplegia.  Mr. Roque is limited in many major life

6  activities including but not limited to: caring for oneself, performing manual tasks, eating,

7  sleeping, walking, standing, lifting, bending[1], reading and working. Mr. Roque also requires full-

8  time care to assist in Activities of Daily Living ("ADLs") such as bathing, body care, bed

9  mobility, eating, locomotion, medication assistance, use of the toilet, personal hygiene, dressing,

10 and transfer.  Mr. Roque is a qualified individual with a disability within the meaning of the

11 Americans with Disabilities Act ("ADA"), The Rehabilitation Act, the Washington Law Against

12 Discrimination ("WLAD"), and has a handicap under the Fair Housing Act Amendments

13 ("FHAA").

14     6.   Seattle Housing Authority ("SHA") is an independent public entity located in

15 Washington State and operates Raven Terrace, Mr. Roque's residence. The majority of SHA's

16 funding is through the federal government, through the Department of Housing and Urban

17 Development. SHA is a public entity under the ADA and Section 504 of the Rehabilitation Act.

18 ## III.   JURISDICTION AND VENUE

19     7.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives district

20 courts original jurisdiction over civil actions arising in the Constitution, laws, or treaties of the

21

22

---

[1] Mr. Roque has C-6 quadriplegia and as a result cannot walk, stand, lift, or bend.  To the extent that it was required that he do so, he would need the help of multiple caregivers and nurses.

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **3** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   United States.

2       8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(4), which gives

3   district courts jurisdiction over actions to secure civil rights under Acts of Congress.

4       9.      This Court has jurisdiction pursuant to 28 U.S.C. § 1367, which gives district

5   courts supplemental jurisdiction over state law claims.

6       10.     Venue is appropriate in this judicial district under 28 U.S.C. § 1391 because the

7   events that gave rise to Mr. Roque's Complaint for Injunctive Relief and Damages occurred in

8   this district and SHA resides within this district.

9                      **IV.   FACTUAL ALLEGATIONS**

10      11.     Tony Roque is 49 years old and has C-6 quadriplegia.

11      12.     Mr. Roque also has high blood pressure, neurogenic bowel and bladder, history of

12  recurrent urinary tract infections, recurrent decubitis skin ulcers requiring several surgeries, and a

13  history of depression.

14      13.     Due to his disability, Mr.  Roque fully relies on his care provider and visiting

15  nurses in order to stay alive.

16      14.     Ideally, Mr. Roque would have a care provider present 24 hours per day, but the

17  state of Washington only provides that level of support in institutional settings such as nursing

18  homes. Mr. Roque is eligible for the highest level of in-home care Washington's Department of

19  Health and Human Services offers, which is "E High" care, and he has been approved to receive

20  16 hours of in-home care each day. Even getting this many in-home care hours required special

21  approval, as it is above the usual maximum that the state will pay for.

22      15.     Mr. Roque needs every one of these 16 hours of available daily care to fully use

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **4** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1    and enjoy his dwelling at Raven Terrace. Without them, he would have little choice but to live in

2    a nursing home or other institution—exactly the sort of outcome that state and federal disability

3    laws were enacted to avoid.

4        16.    Mr. Roque's caregivers are on the clock from the moment they begin working for

5    him (for example, from the moment they begin helping Mr. Roque by shopping for food,

6    medication, or other necessities). When Mr. Roque's caregivers are forced to travel to and from

7    the store by bus rather than car, or to spend time looking for street parking rather than simply

8    parking in the Raven Terrace lot, this detracts from the already-limited amount of time they can

9    spend helping Mr. Roque in other ways.

10       17.    Similarly, Mr. Roque's visiting nurses must occasionally park in the Raven

11   Terrace lot to bring Mr. Roque medical equipment and supplies or provide him with life-

12   sustaining care.  Mr. Roque's care providers and visiting nurses can generally coordinate arrival

13   times, such that they are able to share a single space.

14       18.    Mr. Roque requires assistance with most ADLs, including but not limited to

15   bathing, body care, bed mobility, eating, locomotion, medication assistance, use of the toilet,

16   personal hygiene, dressing, essential shopping, housework, locomotion in room, locomotion

17   outside room, meal preparation, medication management, transfers, transportation, and

18   turning/repositioning.

19       19.    Mr. Roque also requires assistance with major life activities including but not

20   limited to caring for oneself, performing manual tasks, eating, sleeping, walking, standing,

21   lifting, bending, reading, and working.

22       20.    Mr. Roque must be repositioned every 30 minutes to relieve pressure on his body

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **5** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   and maintain the integrity of his skin so that the chances of potentially life-threatening pressure

2   sores are minimized.

3       21.    Mr. Roque uses a power wheelchair for any travel outside of his apartment.

4       22.    For several months of 2020, Mr. Roque's current care provider, Fatuma

5   Mohamud, was the only care provider who is still willing and able to work and help Mr. Roque

6   during the COVID-19 pandemic. Mr. Roque's apartment is not large enough for a care provider

7   to live there full-time, so care providers must commute using a car.

8       23.    Care providers commute by car to not only transport themselves to Mr. Roque's

9   residence, but to also bring him his food, medicine, and medical supplies.

10       24.    Mr. Roque has been a resident of Raven Terrace Apartments ("Raven Terrace")

11   since February 2018.

12       25.    Raven Terrace is located at 820 Yesler Way in Seattle and is owned and operated

13   by SHA as a public housing community for low-income residents.

14       26.    Raven Terrace is located in a busy and densely populated neighborhood of Seattle

15   that does not have consistently available street parking. Where available street parking can be

16   found, parking is limited to two (2) hours and is Zone 7 Restricted Parking Zone ("RPZ").

17       27.    Raven Terrace offers a parking garage on-site for residents and staff to park.

18       28.    The two unassigned accessible parking spaces located inside the Raven Terrace

19   parking garage are currently inaccessible to Mr. Roque, his guests, or accessible transportation

20   services that he would use because the required access aisle, located in between the two

21   accessible parking spaces is obstructed by a large fixed permanent metal post in the center of the

22   aisle.  Without a clear access aisle, Mr. Roque is forced to enter and exit vehicles in the zone of

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **6** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1 | traffic, and is in danger of being struck by vehicles.

2 | 29. Mr. Roque is entitled to be transported to and from his residence without having

3 | to risk his safety, but the lack of a required clear access aisle at Raven Terrace's "accessible"

4 | spaces makes this impossible.

5 | 30. The garage at Raven Terrace has both assigned and unassigned parking.

6 | 31. Defendants have a stated policy of not providing parking in the Raven Terrace

7 | garage for the caregivers of residents with disabilities, even if such parking is needed to provide

8 | those residents with full use and enjoyment of their dwellings—as is the case with Mr. Roque.

9 | 32. In order for Mr. Roque's care provider and visiting nurses to provide his life-

10 | sustaining care Mr. Roque requires them to park in the Raven Terrace parking garage.

11 | 33. Given the extent of Mr. Roque's personal care needs it is imperative that the

12 | caregiver and visiting nurses are present for a significant period of time.

13 | 34. Mr. Roque's care provider brings a car full of groceries, medicine, and medical

14 | supplies to Mr. Roque on an almost daily basis.

15 | 35. If Mr. Roque needs to come into his doctor's medical office or the hospital his

16 | care providers need to accompany him to assist with transfers, body repositioning, and with

17 | catheter care and bowel movements. They also need to bring his belongings such as his medical

18 | devices like a portable urinal should his catheter bag become full. As such, Mr. Roque requires

19 | his caregivers to have access to their car for his medical supplies and to have a place nearby for

20 | them to leave their car should they need to accompany him for medical care.

21 | 36. For over 24 months, Mr. Roque's care providers and visiting nurses were allowed

22 | to park at Raven Terrace without incident.

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **7** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

37.     On or about March 5, 2020, SHA towed Mr. Roque's care provider's car while she was at his residence caring for him.

38.     Mr. Roque's care provider had to pay almost $500 to retrieve her car.

39.     After this incident, Raven Terrace staff informed Mr. Roque for the first time that the parking garage was only for residents and staff, not visitors.

40.     SHA informed Mr. Roque that because he cannot drive, and as a result does not own a car, he cannot use a parking space, even for his required care provider or visiting nurses.

41.     Mr. Roque's primary care provider lives 6.6 miles away from Raven Terrace.

42.     After SHA implemented its new parking policy prohibiting care provider parking, Mr. Roque's primary care provider was forced to endure a prolonged bus trip and walking to reach Raven Terrace, all while carrying her belongings and Mr. Roque's groceries and medical supplies.

43.     Getting groceries, medicine, and medical supplies for Mr. Roque by bus rather than car can often take an additional hour or more, taking away from the time that Mr. Roque's care providers can spend actually providing care to him each day.

44.     Similarly, if Mr. Roque's care providers are forced to spend time searching for parking rather than simply parking in the Raven Terrace lot, that is time that they cannot spend caring for Mr. Roque.

45.     Defendant's refusal to allow Mr. Roque's caregivers to park at Raven Terrace has also affected the care Mr. Roque can receive in other ways, and impacted his ability to live independently and use an enjoy his dwelling. For example, because of lower back problems his care provider has developed from walking and carrying heavy loads of groceries to Raven

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **8** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

Terrace rather than traveling by car, she has at times been unable to effectively turn Mr. Roque to bathe him or otherwise provide him with necessary care—a problem that had never occurred when she could simply park in the Raven Terrace lot and carry Mr. Roque's groceries a short distance.

46.     Finding alternative parking is not an option for the care providers as there is no consistent street parking available in Mr. Roque's urban Yesler neighborhood.

47.     The on-street parking near Mr. Roque's building is Zone 7 Restricted Parking Zone.

48.     RPZ parking requires permit holder to either a) be a resident of the zone, or b) be an employee of an employer within the zone.

49.     Having Mr. Roque's caregivers take public transportation is beyond inconvenient as it poses a health risk to Mr. Roque, who is vulnerable to infection and cannot risk unnecessary exposure to germs, including COVID-19.

50.     Because of his disability and his disability-related inability to work, Mr. Roque is low-income and cannot afford to reimburse his care providers for use of a private taxi service, which would cost at least $37 per trip.

51.     Furthermore, finding alternative care providers and visiting nurses is not an option because other care providers have refused to visit Mr. Roque during the COVID-19 outbreak.

52.     Regardless of the COVID-19 situation, Mr. Roque's choice of care providers should not be dictated by SHA's parking policies.

53.     On March 9, 2020, Mr. Roque requested a parking permit from Raven Terrace property manager, Davina O'Connor, and building manager Eric Owens, via email about the

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **9** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   situation, but O'Connor refused to give him one.

2   54.   On March 10, 2020, Mr. Roque next contacted accommodations specialist Sanja

3   Stegich to request a reasonable accommodation to allow Mr. Roque's care provider and visiting

4   nurses to park in the parking lot.

5   55.   On March 26, 2020, Mr. Roque's physician Dr. Matthew Jaffy submitted a

6   medical questionnaire in support of Mr. Roque's reasonable accommodation request.

7   56.   On April 6, 2020, Mr. Roque's case manager at the Human Services Department

8   for the City of Seattle, Mark Bernstein, submitted a letter in support of Mr. Roque's reasonable

9   accommodation request.

10   57.   Mr. Bernstein's email clearly stated that it is imperative that Mr. Roque needs his

11   care provider and visiting nurses at his residence for extended periods of time and that

12   accommodations for them to park at Raven Terrace is an important part of Mr. Roque's support

13   through the city's service plan.

14   58.   Despite this information, SHA denied Mr. Roque's request for reasonable

15   accommodation on April 20, 2020.

16   59.   SHA's stated reason for the denial is that the accommodation was limited to Mr.

17   Roque's caregiver, who is not disabled and not a participant in SHA's low income housing

18   program.

19   60.   Upon information and belief, SHA has denied Mr. Roque's request for reasonable

20   accommodation because Mr. Roque continued, out of necessity and in assertion of his rights as a

21   person with a disability, to allow his care provider and visiting nurses to park in the Raven

22   Terrace garage.

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **10** of 30

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

61.     Without full and consistent access to his care provider's vital services, Mr. Roque has been unnecessarily suffering both physically and emotionally.

62.     Mr. Roque has gone without eating because his care provider cannot bring him food and supplies. Mr. Roque went four days in a row on nothing but bread and condiments.

63.     Mr. Roque's skin is deteriorating due to unrelieved pressure because his care provider is no longer able to consistently access Mr. Roque to reposition his body as regularly.

64.     On April 17, Mr. Roque sent an email to Case Manager at the Human Services Department for the City of Seattle, Mark Bernstein letting him know that due to his care provider being forced to carry heavy loads of Mr. Roque's groceries and supplies while traveling by bus and on foot, and her resulting back problems, Mr. Roque had been left on his back for two days with no relief from the pressure.

65.     On June 8, 2020 the ADA-504 Committee held a hearing to review SHA's denial of Mr. Roque's accommodation request and his subsequent appeal of that denial.

66.     On June 17, 2020, SHA issued a final decision on Mr. Roque's appeal. The decision denied Mr. Roque's request for a reserved parking space at Raven Terrace, and offered, as an "alternative accommodation," that Mr. Roque could move out of Raven Terrace entirely, including to a "privately owned building of his choosing, with ample parking for residents and guests."

67.     Mr. Roque could starve, die from infection, or be forced to move into a long-term care facility if he does not consistently have the life-sustaining care that he receives from his care provider and visiting nurses.

68.     Mr. Roque has no family in Washington and his care provider is his only source

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **11** of 30

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1  of caregiving.

2      69.    Mr. Roque's imminent health risks and increased isolation, in addition to the fear

3  attached to the COVID-19 pandemic, has caused him great emotional distress.

4      70.    Due to SHA's discrimination against Mr. Roque due to his disability, deliberate

5  indifference, and failure to provide Mr. Roque with a reasonable accommodation, Mr. Roque is

6  at risk of starvation, infection, hospitalization, institutionalization, severe depression, and death.

7      71.    On May 13, 2020, Mr. Roque filed a Tort Claim Form with SHA detailing SHA's

8  discriminatory practices and its failure to make reasonable modifications, as well as the other

9  claims alleged herein. There was no response as of the date of this filing.

### V. FIRST CAUSE OF ACTION
### Title II of the Americans with Disabilities Act of 1990
### 42 U.S.C. §§ 12131 *et seq*

    72.    Mr. Roque incorporates by reference the allegations in the paragraphs above.

    73.    The ADA was enacted 30 years ago in order to protect individuals with

disabilities against discrimination.

    74.    Mr. Roque is substantially limited the major life activities of caring for oneself,

performing manual tasks, eating, sleeping, walking, standing, lifting, bending, reading and

working. He is therefore an individual with a disability within the meaning of Title II of the

ADA, 28 C.F.R. § 35.108(a).

    75.    Mr. Roque is a qualified individual with a disability under the meaning of Title II

of the ADA, 42 U.S.C.A. § 12131(2), because he meets the essential eligibility requirements for

the receipt of public housing services by SHA, a public entity.

    76.    As a public housing agency, SHA is a public entity under the meaning of Title II

of the ADA., 42 U.S.C.A. § 12131(1).

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **12** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

77.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132.

78.     SHA illegally and intentionally discriminated and continues to discriminate against Mr. Roque, on the basis of his disability and in violation of Title II of the ADA, by denying him the benefits of public housing that meets his basic needs.

79.     A public entity must make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i).

80.     As a public entity, SHA is required to make reasonable modifications in its parking policies in order to avoid discriminating against Mr. Roque because of his disability.

81.     Allowing Mr. Roque's care provider and visiting nurses to park in the Raven Terrace garage will not fundamentally alter the nature of public housing service, but rather will further meet SHA's purpose of serving low-income residents and community members with disabilities.

82.     As SHA has refused to make reasonable modifications for Mr. Roque, SHA is in violation of Title II of the ADA.

83.     As a public entity, SHA is required to operate each service, program, or activity "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities."  28 C.F.R. § 35.150; see also 28 C.F.R. § 35.149.

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

84.     Parking in the Raven Terrace garage is a service provided to residents, as part of SHA's public housing program.  Because of his disability, Mr. Roque, cannot operate and thus does not own a car, but he still needs a space for his caregivers and visiting nurses, for the reasons alleged above. By denying Mr. Roque this necessary and reasonable accommodation, SHA denies Mr. Roque the benefits of the services, programs, or activities of a public entity, and discriminates against him in violation of the ADA.

85.     For facilities constructed after 1992, the facility must be designed and constructed to be readily accessible and usable by individuals with disabilities. 28 CFR § 35.151(a).

86.     For facilities altered after 1992, the facility must be, to the maximum extent feasible, "altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities." 28 CFR § 35.151(b)(1).

87.     A public entity must maintain in operable working condition the features of all facilities required to be readily accessible under the ADA. 28 C.F.R. § 35.133.

88.     For construction or alterations occurring after 2012, a facility is "readily accessible" when it conforms to the standards of the 2010 ADA Accessibility Guidelines.  28 C.F.R. § 35.151(c)(3).

89.     On information and belief, SHA has constructed, altered, or repaired parts of the Raven Terrace Apartment Complex within the meaning of the ADA since January 26, 1992.

90.     On information and belief, since 2013 SHA has constructed, altered, or repaired parts of Raven Terrace within the meaning of the ADAAG, and SHA has failed to make the parking garage facilities compliant with the 2010 ADAAG guidelines as required under 28 C.F.R. § 35.151(c)(5).

First Amended Complaint for Declaratory and Injunctive Relief and Damages
Page **14** of 30

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

91.     ADAAG standard 502.3 requires all accessible parking spaces to have an adjacent access aisle to facilitate transfer of passengers with disabilities that need the extra room to load and unload their mobility devices.

92.     When Mr. Roque or other residents with mobility disabilities need to be transported in an accessible vehicle from the Raven Terrace parking garage, the post in the middle of the access aisle prevents them from using the aisle for its intended purpose, loading and unloading passengers using wheelchairs.

93.     The failure of SHA to make the Raven Terrace parking garage compliant with the ADA's accessibility laws, regulations, and standards works to exclude Mr. Roque and other people with disabilities from equal program access and participation in the parking services provided to residents without disabilities.

94.     The Raven Terrace parking facilities are not readily accessible to public housing program participants with disabilities in violation of Title II regulations.

95.     By allowing a post to remain blocking residents from using the accessible access aisle, SHA has failed to maintain the required accessible portions of Raven Terrace parking facilities in operable condition in violation of 28 C.F.R. § 35.133.Compensatory damages may be recoverable by an individual under Title II of the ADA when a public entity intentionally discriminates through "deliberate indifference." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

96.     "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139.

97.     SHA, through the Raven Terrace building manager Eric Owens, property manager

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **15** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1    Davina O'Connor, and accommodations specialist Sanja Stegic, knew that Mr. Roque

2    desperately needed the life-sustaining care and medical treatment from his care provider and

3    visiting nurses. They further knew that in order to properly care for Mr. Roque, his care provider

4    and visiting nurses need to park at Raven Terrace for a minimum of several hours at a time, often

5    longer. Their knowledge is from not only Mr. Roque's personal requests, but from official

6    communication with both Mr. Roque's doctor and his Case Manager. In spite of this knowledge,

7    and repeated written requests from Mr. Roque, SHA intentionally denied Mr. Roque's

8    reasonable accommodation request as well as his appeal of their denial of his request, thus

9    deliberately and intentionally failing to act to protect his rights.

10          98.    SHA intentionally and deliberately discriminated and continues to do so against

11   Mr. Roque, on the basis of his disability, in violation of Title II of the ADA and its implementing

12   regulations.

13          99.    Mr. Roque is therefore entitled to injunctive relief, monetary damages, and an

14   award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12133.

15                          **VI.    SECOND CAUSE OF ACTION**
                            **The Fair Housing Amendments Act**
16                          **42 U.S.C. § 3604 *et seq.***

17          100.   Plaintiff incorporates by reference all allegations in the paragraphs above.

18          101.   The Federal Fair Housing Amendments Act ("FHAA") makes it unlawful to

19   "discriminate against any person…in the provision of services or facilities in connection with [a]

20   dwelling, because of a handicap of

21                  (A) that person; or

22

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

(B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

C) any person associated with that person. 42 U.S.C. § 3604(f)(2).

102.    Under the FHAA, a person has a "handicap" when they have "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C.A. § 3602(h)(1).

103.    Mr. Roque has C-6 quadriplegia, requires the use of a power wheelchair for transportation, and is a person with a handicap within the meaning of the FHAA. 42 U.S.C. § 3602(h)(1).

104.    Due to his disability, Mr. Roque fully relies on his care provider and visiting nurses in order to stay alive.  As discussed above, Mr. Roque is approved to receive 16 hours of in-home care each day, and he needs every one of these 16 hours of available daily care to fully use and enjoy his dwelling at Raven Terrace. Without them, he would have little choice but to live in a nursing home or other institution—exactly the sort of outcome that state and federal disability laws were enacted to avoid.

105.    Mr. Roque's caregivers are on the clock from the moment they begin working for him (for example, from the moment they begin helping Mr. Roque by shopping for food, medication, or other necessities), and when Mr. Roque's caregivers are forced to travel to and from the store by bus rather than car, or to spend time looking for street parking rather than simply parking in the Raven Terrace lot, this detracts from the already-limited amount of time they can spend helping Mr. Roque in other ways. A parking space that can be used by Mr. Roque's caregivers and visiting nurses is thus necessary for Mr. Roque to fully use and enjoy his

First Amended Complaint for Declaratory and Injunctive Relief and Damages
Page **17** of **30**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

dwelling.

106.     The parking garage at Raven Terrace is a facility in connection with the residence and is made available to other residents without disabilities as a service provided with their housing.

107.     By denying Mr. Roque use of the parking garage facility for his housing needs, and justifying the denial because he cannot drive a car due to his disability, SHA discriminates against Mr. Roque in the provision of services at Raven Terrace.

108.     Discrimination under the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

109.     Federal Regulations implementing the FHAA specifically give an example of a reasonable accommodation as providing a reserved parking space for a mobility impaired resident. "It is a violation of [the regulation] for the owner or manager of [the residence] to refuse to make this accommodation. Without a reserved space, [the resident] might be unable to live in [the residence] at all...The accommodation therefore is necessary to afford [him] an equal opportunity to use and enjoy a dwelling. 24 C.F.R. § 100.204(b)(example 2).

110.     This previous example is analogous to Mr. Roque's situation. He must have access to a parking space in the garage in order to get the care he needs from his care providers not only to be able to live at Raven Terrace, but to live at all. Despite not physically being able to drive due to his disability, Mr. Roque would be the individual making direct use of this reasonable accommodation in order to have an equal opportunity to use and enjoy his housing.

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **18** of 30

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1    The only difference between Mr. Roque making use of a space in the parking garage and other

2    residents using the parking garage is his disability, an illegal and discriminatory distinction.

3          111.    SHA discriminates against Mr. Roque by refusing to make reasonable

4    accommodations in their parking garage policies, despite knowing that the accommodation is

5    necessary for Mr. Roque, as a person with a disability, to have an equal opportunity to use and

6    enjoy his residence.

7          112.    SHA's discriminatory conduct as alleged in this Complaint for Declaratory and

8    Injunctive Relief, and in the Tort Claim Form has harmed Mr. Roque and threatened his life. The

9    harm and the risk will continue without declaratory and injunctive relief.

10         113.    SHA's discriminatory conduct as alleged in this Complaint for Declaratory and

11   Injunctive Relief, and in the Tort Claim Form entitles Mr. Roque to declaratory and injunctive

12   relief as well as actual damages. 42 U.S.C. § 3613(c).

13         114.    SHA's discriminatory conduct as alleged in this Complaint for Declaratory and

14   Injunctive Relief entitles Mr. Roque to recover reasonable attorneys' fees and costs. *Id.*

15                            **VII.   THIRD CAUSE OF ACTION**
                          **The Washington Law Against Discrimination**
16                            **RCW §§ 49.60.010 *et seq.***

17         115.    Mr. Roque incorporates by reference the allegations in the paragraphs above.

18         116.    The Washington Law Against Discrimination ("WLAD") declares: "The right to

19   be free from discrimination because of . . . the presence of any sensory, mental, or physical

20   disability . . . is recognized as and declared to be a civil right.  This right shall include, but not be

21   limited to: . . . (b) The right to the full enjoyment of any of the accommodations, advantages,

22

First Amended Complaint for Declaratory and Injunctive           WASHINGTON CIVIL & DISABILITY
Relief and Damages                                                         ADVOCATE
Page **19** of **30**                                               4115 Roosevelt Way NE, Suite B
                                                                        Seattle, WA 98105
                                                                          (206) 428-3558

1   facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement

2   . . . " RCW § 49.60.030(1).

3       117.    A prima facie case of public accommodation discrimination under the WLAD

4   consists of: (1) [the plaintiff has] a disability recognized under the statute; (2) the defendant's

5   business or establishment is a place of public accommodation; (3) they were discriminated

6   against by receiving treatment that was not comparable to the level of designated services

7   provided to individuals without disabilities by or at the place of public accommodation; and, (4)

8   the disability was a substantial factor causing the discrimination. *Fell v. Spokane Transit Auth.*,

9   128 Wash. 2d 618, 637, 911 P.2d 1319, 1328 (1996).

10      118.    Mr. Roque is an individual with a disability within the meaning of the WLAD as

11  he has a physical impairment that is medically cognizable or diagnosable. RCW §

12  49.60.040(7)(a)(i).

13      119.    SHA charges for occupancy of its property and its facilities are conducted for

14  housing. Parking at Raven Terrace is provided to residents in a communal garage accessed and

15  used by many residents.  Thus, the parking garage at Raven Terrace is a public accommodation

16  under the WLAD. RCW 49.60.040.

17      120.    Mr. Roque was not treated comparably to his fellow Raven Terrace residents

18  because he is not provided the reasonable accommodations he needs in order to live safely in

19  public housing. Mr. Roque was denied a parking space because he does not have a car himself.

20  Mr. Roque does not have a car because he cannot drive a car due to his disability. The only

21  reason Mr. Roque is provided with this discriminatory living experience is SHA's refusal to

22  accommodate Mr. Roque's disability.

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

121.     Specifically in regard to housing, as opposed to public accommodations, it is an unfair practice under the WLAD to "refuse to make reasonable accommodation in rules, policies, practices, or services when such accommodations may be necessary to afford a person with the presence of any sensory, mental, or physical disability…equal opportunity to use and enjoy a dwelling." RCW § 49.60.222(2)(b).

122.     SHA has committed an unfair housing practice under the WLAD by refusing to provide Mr. Roque with the reasonable accommodation that he needs in order to safely live at Raven Terrace. SHA denies him the equal opportunity to use and enjoy his residence in violation of the WLAD.

123.     SHA further discriminates against Mr. Roque by failing to provide fully accessible parking in the Raven Terrace Parking garage.

124.     SHA's choice to put a large fixed permanent metal post in the middle of the access aisle between the garage's two unassigned accessible parking space constitutes discrimination against persons with disabilities and violates the WLAD in that persons with mobility disabilities are denied full and equal enjoyment of the parking garage facilities that SHA provides to other residents and guests without disabilities.

125.     Mr. Roque has a clear legal right to access and use the parking garage at his residence the WLAD.

126.     Mr. Roque has the right that SHA's property to comply with the ADA's accessibility laws and regulations under the WLAD.

127.     SHA's property does not comply with ADA accessibility laws and regulations, including the 1991 Standards and the 2010 Standards.

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

128.    Because SHA's property does not comply with the ADA's accessibility laws and regulations, declaratory and injunctive relief are appropriate remedies under the WLAD. *See e.g. Kucera v. Dep't of Transp.*, 140 Wash. 2d 200, 209 (2000).

129.    Pursuant to RCW § 49.60.030(2), SHA's actions entitle Mr. Roque to declaratory and injunctive relief and to recover from SHA actual and general damages and reasonable attorneys' fees and costs incurred in bringing this action.

## VIII.   FOURTH CAUSE OF ACTION
### Section 504 of The Rehabilitation Act of 1973
### 29 U.S.C. § 794 et seq.; "Section 504"

130.    Plaintiff incorporates by reference the allegations in the paragraphs above.

131.    Mr. Roque is limited in the major life activity of caring for oneself, performing manual tasks, eating, sleeping, walking, standing, lifting, bending, reading and working and is thus an individual with a disability as defined by Section 504. 29 U.S.C. § 705(9).

132.    At all times relevant to this action, SHA has been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

133.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

134.    A recipient of federal funds that provides housing illegally discriminates by "[denying] a qualified individual with handicaps the opportunity to participate in, or benefit from, the housing, aid, benefit, or service"… or providing "housing, aid, benefit, or service that is not as effective in affording the [individual with a disability] an equal opportunity to obtain the

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **22** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   same result, to gain the same benefit, or to reach the same level of achievement as that provided

2   to others." 24 C.F.R. § 8.4(b)(1)(i),(iii).

3       135.    Parking in the Raven Terrace garage is a service provided to residents, as part of

4   SHA's public housing program.  Because of his disability, Mr. Roque, cannot operate and thus

5   does not own a car, but he still needs a space for his caregivers and visiting nurses, for the

6   reasons alleged above. By denying Mr. Roque this necessary and reasonable accommodation,

7   SHA denies Mr. Roque the benefits of a program or activity receiving Federal financial

8   assistance, and discriminates against him in violation of § 504.

9       136.    Any program receiving federal assistance may not, directly or through contractual

10  or other arrangements, "utilize criteria or methods of administration the purpose or effect of

11  which would:

12          (i) Subject qualified individuals with handicaps to discrimination solely on the

13          basis of handicap;

14          (ii) Defeat or substantially impair the accomplishment of the objectives of the

15          recipient's federally assisted program or activity for qualified individuals with a

16          particular handicap involved in the program or activity, unless the recipient can

17          demonstrate that the criteria or methods of administration are manifestly related to

18          the accomplishment of an objective of a program or activity; 24 C.F.R. §

19          8.4(b)(4)."

20      137.    The criteria SHA used to deny Roque access and use of the Raven Terrace

21  parking garage had the effect of subjecting him to discrimination solely based on his disability.

22

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **23** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1   SHA only denied Mr. Roque access because he has a disability and therefore cannot drive,

2   despite having a legitimate need and right to use the garage space as a resident.

3          138.    SHA's criteria used to deny Mr. Roque's care providers access to the parking

4   garage substantially impair the accomplishment of the objective of public housing – providing

5   safe residences for low-income individuals and individuals with disabilities. The criteria are

6   unrelated to accomplishing the federal program. Rather, they produce the opposite effect for Mr.

7   Roque.

8          139.    The Rehabilitation Act extends relief to "any person aggrieved" by discrimination

9   in violation thereof. 29 U.S.C. § 794a(a)(2).

10         140.    An individual may recover compensatory damages under the Rehabilitation Act

11  when a public entity intentionally discriminates through "deliberate indifference." *Duvall v. Cty.*

12  *of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

13         141.    "Deliberate indifference requires both knowledge that a harm to a federally

14  protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139.

15         142.    SHA, acting through the Raven Terrace manager Eric Owens, property manager

16  Davina O'Connor, and accommodations specialist Sanja Stegic, was informed in writing on

17  multiple occasions that Mr. Roque desperately needed the life-sustaining treatment from his care

18  provider and visiting nurses.

19         143.    SHA further knew that in order to properly care for Mr. Roque, his care provider

20  and visiting nurses must park at Raven Terrace for several hours at a time.

21         144.    SHA's knowledge is from not only Mr. Roque's personal requests, but from

22  official communication with both Mr. Roque's doctor and his case manager.

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **24** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

145.   In spite of this knowledge, SHA intentionally denied Mr. Roque's reasonable accommodation request as well as his appeal of their denial of his request, intentionally failing to act to protect his rights.

146.   SHA intentionally discriminated against Mr. Roque, on the basis of his disability, in violation of Title II of the ADA and its implementing regulations.

147.   SHA intentionally discriminated against Mr. Roque, on the basis of his disability, in violation of the Rehabilitation Act and its implementing regulations.

148.   Mr. Roque is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory and general damages for the injuries and loss sustained as a result of SHA's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

### IX.   FIFTH CAUSE OF ACTION
### Title IV of Americans with Disabilities Act
### 42 U.S.C.A. § 12201 *et seq.*

149.   Mr. Roque incorporates by reference the allegations in the paragraphs above.

150.   Title IV of the ADA addresses retaliation and provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the [ADA]." 42 U.S.C. § 12203(a).

151.   It is unlawful under Title IV to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed...any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b).

152.   Mr. Roque opposed the "residents only" parking policy by filing a reasonable accommodation claim, and he continued to exercise his rights, out of necessity, to receive a

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **25** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

1    reasonable accommodation under the ADA by allowing his care providers and visiting nurses to

2    park at Raven Terrace in opposition to SHA's new policy.

3          153.    After he opposed the parking policy and asserted his ADA rights, SHA denied

4    Mr. Roque's request for accommodation, despite understanding reasonableness of the request for

5    accommodation, the strong recommendations from his doctor and caseworker, and the dire

6    consequences of failing to grant the request.

7          154.    By denying Mr. Roque's request for reasonable accommodation, SHA retaliated

8    against him, interfering with his right to accommodation under the ADA and punishing him for

9    voicing his opposition to SHA's policies.

10         155.    SHA further refused to timely expedite any process for appealing the refusal,

11   requiring Mr. Roque to wait weeks or months for further SHA determinations on his request.

12         156.    Due to SHA's discrimination and retaliatory actions in violation of Title IV of the

13   ADA, Mr. Roque is entitled to the same remedies as under Title II of the ADA: injunctive relief,

14   monetary damages, and an award of attorneys' fees, costs. 42 U.S.C.A. § 12203(c).

15                          **X.       SIXTH CAUSE OF ACTION**
                          **Negligent Infliction of Emotional Distress**
16

17         157.    Plaintiff incorporates by reference the allegations in the paragraphs above.

18         158.    To recover for a negligent infliction of emotional distress (NIED) claim, a

19   plaintiff must prove duty, breach, proximate cause, damage, and "objective symptomatology" of

20   emotional distress. *Kumar v. Gate Gourmet Inc.*, 180 Wash. 2d 481, 505, 325 P.3d 193, 205

21   (2014).

22

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

159.     The element of duty is tied to foreseeability. A defendant cannot be held responsible for a risk of harm they could not be expected to foresee. *Strong v. Terrell*, 147 Wash. App. 376, 388, 195 P.3d 977, 983 (2008).

160.     The objective symptomology element requires that a plaintiff show objective symptoms of emotional distress. The emotional distress should be "susceptible to medical diagnosis and proved through medical evidence." *Kumar*, 180 Wash. 2d at 505 325 P.3d at 205 quoting *Hegel v. McMahon*, 136 Wash.2d 122, 135, 960 P.2d 424 (1998).

161.     SHA had a clear statutory duty as public entity and as landlord of Raven Terrace to provide reasonable accommodations for Mr. Roque.

162.     The risk of harm to Mr. Roque was clearly foreseeable to SHA and adamantly expressed by Mr. Roque, his physician, and his caseworker.

163.     SHA breached its duty to Mr. Roque by refusing to reasonably accommodate his disability, knowing that the breach would cause him suffering.

164.     Without consistent access to his caregiver, Mr. Roque's very life is threatened and he has consequently suffered significant emotional distress, isolation, despair, and fear as a direct and proximate result of SHA's refusal to reasonably accommodate him.

165.     Without access to his caregiver, Mr. Roque suffered the terror of being trapped completely alone, unable to move or eat for extended periods of time.

166.     The depression and anxiety brought on by the stress of not having access to life sustaining care is an objective symptom of emotional distress susceptible to medical diagnosis.

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page 27 of 30

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

Washington courts limit NIED claims through a balance of risk against utility. *Id.* A defendant's

alleged negligent conduct is unreasonable when the risks to the plaintiff outweigh the utility of

the action. *Id. at* 205.

167.    The utility of SHA's actions, presumably the administrative ease of not having to

accommodate Mr. Roque's parking needs, is far outweighed by the known extreme risks to Mr.

Roque's physical and emotional health.

168.    In a May 13, 2020 Tort Claim Form, Mr. Roque sets forth the ways in which SHA

negligently inflicted emotional distress.

169.    Due to SHA's unreasonable negligent conduct, Mr. Roque is entitled to monetary

compensation and general damages for his emotional distress caused by SHA's actions.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Assume jurisdiction over this action;

2.    Find and declare Defendant SEATTLE HOUSING AUTHORITY to be in

violation of Title II of the Americans with Disabilities Act, The Fair Housing Act, Section 504 of

the Rehabilitation Act, Title IV of the Americans with Disabilities Act, AND the Washington

Law Against Discrimination  because SHA does not comply with state and federal laws and

regulations;

3.    Find and declare SHA liable for Negligent Infliction of Emotional Distress under

the common law of Washington State because of SHA's conduct towards Mr. Roque;

4.    Issue an injunction requiring SHA to permit Mr. Roque's care provider and

visiting nurses full and unrestricted access to Raven Terrace Parking garage as is necessary to

First Amended Complaint for Declaratory and Injunctive
Relief and Damages
Page **28** of **30**

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

provide Mr. Roque care;

     5.    Award Plaintiff:

        a.   Actual, Compensatory, and general Damages pursuant to Title II of the ADA, the FHAA, the Rehabilitation Act, the WLAD, and Title IV of the ADA.

        b.   Compensatory and general damages for Negligent Infliction of Emotional Distress.

        c.   Reasonable costs and attorneys' fees pursuant to the ADA, the FHAA, the Rehabilitation Act, the WLAD, and Title IV of the ADA.

        d.   Interest on all amounts at the highest rates and from the earliest dates allowed by law.

        e.   Award such additional or alternative relief as may be just, proper, and equitable.

DATED THIS 17th day of July, 2020

By:

*s/ Conrad Reynoldson*
Conrad Reynoldson
WSBA# 48187
conrad@wacda.com
(206) 876-8515


WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 ROOSEVELT WAY NE, SUITE B, SEATTLE, WA 98105
*Attorney for Plaintiff*


s/Thomas Zito                   s/ Sean Betouliere
Thomas Zito                       Sean Betouliere
*PRO HAC VICE*                *PRO HAC VICE*

First Amended Complaint for Declaratory and Injunctive Relief and Damages
Page **29** of **30**

WASHINGTON CIVIL & DISABILITY ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558

tzito@dralegal.org                        sbetouliere@dralegal.org
(510) 529-3412                            (510) 529-3428

DISABILITY RIGHTS ADVOCATES
2001 CENTER STREET, 4TH FLOOR, BERKELEY, CA 94704

*Attorneys for Plaintiff Tony Roque*

WASHINGTON CIVIL & DISABILITY
ADVOCATE
4115 Roosevelt Way NE, Suite B
Seattle, WA 98105
(206) 428-3558